SCHRADER, Appellee,

v.

SCHRADER, Appellant.

[Cite as *Schrader v. Schrader* (1995), 108 Ohio App.3d 25.]

Court of Appeals of Ohio,
Sixth District, Huron County.

No. H–95–036.

Decided Dec. 22, 1995.

*Jon P. Schaefer,* for appellee.
*Curtis J. Koch,* for appellant.

SHERCK, Judge.

This is an appeal from an order of the Huron County Court of Common Pleas which modified a qualified domestic relations order ("QDRO"), following a retirement plan's recoupment of temporary disability payments it had previously paid. The trial court, however, had failed to reserve jurisdiction to modify the parties' property division of which the retirement plan was part. As a result, the court lacked authority to modify the QDRO and its decision must be reversed.

Appellant, Eddie Ray Schrader, and appellee, Nora L. Schrader, were married in 1958. During the marriage, appellant was an auto worker for the Ford Motor Company.

In the mid–1980s, the marriage began to unravel. In October 1985, appellee filed for divorce. For reasons not relevant to this appeal, the final divorce decree in this matter was not issued until 1989. As part of the 1989 decree, the trial court divided appellant's Ford Motor–UAW retirement benefits by the issuance of a QDRO. The QDRO required that the benefit plan administrator pay directly to appellee one-half of appellant's monthly benefit accumulation during the marriage. The order directed the plan administrator to pay these benefits in the same manner and at the same time as they were paid to appellant. In the final section of the order, the court retained "limited jurisdiction to amend this order only for the purpose of meeting any requirements to create, conform, and maintain this order as a Qualified Domestic Relations Order pursuant to the Retirement Equity Act of 1984."

In 1989, appellant became totally disabled as the result of complications from diabetes. When the Social Security Administration initially denied appellant's disability claim, he applied for disability retirement through Ford. Appellant's application was approved and monthly benefits began in March 1991 in the

amount of $1,646. This amount consisted of $896, "life income benefit * * * plus a $750 Temporary benefit." Appellant's retirement plan applied the QDRO-mandated percentage to the entire $1,646 and sent the resultant sum directly to appellee. However, appellant's benefit notification explained that the $750 was payable only until age sixty-two and was predicated on the Social Security Administration's denial of his disability claim. According to the notification letter, the plan could recover its payment of this temporary monthly benefit if appellant received Social Security disability benefits.

During the summer of 1992, the Social Security Administration reversed its decision on appellant's disability claim and awarded him benefits retroactive to October 1, 1989. Upon receiving notification of the Social Security Administration's action, appellant's retirement plan sought to recover the $14,250 in temporary benefits it had paid to appellant and appellee during the preceding nineteen months. Appellant opted for a monthly payback wherein his benefits were reduced to a base amount of $998, half of which was retained as recovery for the temporary benefit. The plan applied the QDRO percentage to the remainder and sent that sum directly to appellee.

Appellee moved the trial court for an order modifying the QDRO. She argued that it was unfair for her to repay one-half of the temporary benefit amount when essentially the repayment was to compensate the Ford retirement plan for monies received in lieu of Social Security benefits and her ex-husband had received the whole of the Social Security benefits.

The motion was heard before a referee, who accepted appellee's argument and recommended that the QDRO be modified to compensate for the figure appellee was required to contribute to the repayment. Appellant's objections to the referee's recommendations were overruled by the trial court, which adopted the referee's report as its order. From this order, appellant now brings this appeal, in which he sets forth the following two assignments of error:

"1. The Common Pleas Court of Huron County, Ohio lacked jurisdiction to modify a Qualified Domestic Relations Order which is in the nature of a property settlement.

"2. The Trial Court erred in modifying the Qualified Domestic Relations Order requiring Defendant/Appellant to pay back to Ford Pension that money that was wrongfully paid to Plaintiff/Appellee."

█ In his first assignment of error, appellant argues that the QDRO in question was drafted as a property division and that, absent a specific reservation of jurisdiction to modify the order, the trial court lacks jurisdiction to amend the order.

Appellee responds that appellant waived the jurisdictional question by failing to raise it before the trial court. In the alternative, appellee argues that jurisdiction was reserved "for the purpose of meeting any requirements to create, conform, and maintain" a QDRO under federal law.

The issue of a court's lack of subject-matter jurisdiction may be raised at any point in the proceeding, including on appeal. *Fox v. Eaton Corp.* (1976), 48 Ohio St.2d 236, 238, 2 O.O.3d 408, 409, 358 N.E.2d 536, 537, overruled on other grounds in *Manning v. Ohio State Library Bd.* (1991), 62 Ohio St.3d 24, 577 N.E.2d 650. Accordingly, the jurisdictional question is properly before us.

A domestic relations court lacks jurisdiction to revisit the division of property in a divorce or dissolution unless its final judgment or decree contains an express reservation of continuing jurisdiction. *Bean v. Bean* (1983), 14 Ohio App.3d 358, 361–362, 14 OBR 462, 465–467, 471 N.E.2d 785, 789–791, and authorities cited therein. The general rule is that pension and retirement benefits are marital assets subject to division as personal property. *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 178, 559 N.E.2d 1292, 1294–1295. Even so, a domestic relations court, in the interest of fashioning a fair and equitable award, may deal with the pension and retirement benefits flexibly, including reserving authority to modify a QDRO. *Id.* at 179–180, 559 N.E.2d at 1295–1296. The preferred treatment of a QDRO, however, is that, in the interest of finality of judgments and the disentanglement of the parties, jurisdiction should not ordinarily be reserved. *Id.*

In this matter, there is no indication in the record that the trial court or any of the parties intended for the 1989 QDRO to be anything other than a device to divide appellant's retirement benefits. Therefore, absent an express reservation, the trial court lacked jurisdiction to modify its order. The only such reservation appearing in the order is the language quoted above concerning the modification of the order to "create, conform, and maintain" the QDRO. A fair reading of this clause indicates a narrow reservation of power so that the court might maintain the effectiveness of the order in the current of ever-changing federal law. It cannot be read as an express reservation of jurisdiction to modify the terms of the QDRO or the division of the underlying pension benefits. Accordingly, appellant's first assignment of error is found well taken.

Our decision concerning appellant's first assignment of error makes it unnecessary to reach his second assignment of error which is hereby found moot.

On consideration whereof, the court finds substantial justice has not been done the party complaining, and the judgment of the Huron County Court of Common Pleas, Domestic Relations Division, is reversed. This matter is remanded to that

court for further proceedings consistent with this opinion. It is ordered that appellee pay court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

GLASSER and MELVIN L. RESNICK, JJ., concur.