OPINION
In 1986, appellant/cross-appellee Paulette E. Lemle ("appellant") and appellee/cross-appellant Michael H. Lemle ("appellee") were granted a dissolution of their thirteen year marriage. The dissolution decree incorporated the parties' separation agreement of May 13, 1986.
Two of the clauses of that agreement are presently at issue. Under "CLAIM OF WIFE ON HUSBAND'S RETIREMENT BENEFITS" the agreement states: "The wife shall be entitled to receive her spousal share of husband's retirement benefits, if any." The "REAL ESTATE" portion of the separation agreement provides that the marital home be held by the parties as tenants in common after the dissolution, but that appellant had the right to live in the home for so long as she did not remarry. Appellee was to continue the mortgage payment and other expenses associated with the property. The document also contains the following provisions:
"EQUITY INTEREST
 "There is a present mortgage on the property with a present balance of $20,258.59 as of May 15, 1986, to First Federal Savings and Loan Association of Delta, Ohio. The parties agree that the fair market value of the house at the present time is approximately $68,000.00, and the net equity in the house at the present time is approximately $47,741.41. The parties acknowledge that each presently has an interest in the equity of approximately $23,870.71.
"* * *
"DEATH OF HUSBAND
 "The wife shall continue to reside in the property rent free even after the death of husband should husband predecease the wife. This agreement shall be binding on husband's heirs, next of kin, assigns, transferees, survivors in interest.
 "Should husband predecease wife and wife chooses to reside in the property, the equity of the husband in the property shall be frozen at a figure equal to the appraised value of the property as of the date of death (as determined by an appraiser chosen by wife) less the mortgage balance on the prop erty; then dividing that figure by two (2) as follows:
"Appraised Value (date of death)
Mortgage Balance (date of death)
Total Equity — 2= husband's "frozen" equity amount
"DEATH OF WIFE
 "Should wife predecease husband, the property shall be immediately placed for sale and the net proceeds divided equally between husband and estate of wife. Husband agrees to pay all expenses of property until the property sale is closed.
 "Husband shall not sell his interest in the property during the wife's lifetime without the written consent of the wife. If the wife wants to sell her interest, husband agrees to cooperate and sell his interest. Both parties agree not to sell the property for a sum less than 90% of the appraised value as wife's appraiser shall determine.
 "If the property is sold, the parties agree to divide the net equity equally. Net equity shall mean the sale price less expenses of sale including mortgage payoff but shall not include attorney fees."
The decree does not reserve jurisdiction for future modifications.
On April 7, 1998, appellant moved for appellee to show cause why he should not be held in contempt for failing to pay over the decreed portion of his lump sum retirement benefit. Appellant also sought an order permitting her to sell the couple's real property pursuant to the terms of the dissolution. In response, appellee moved the court for an order requiring appellant to issue him a quit claim deed for her portion of the real property for reason that appellee had allegedly paid appellant most or all of her equity interest in the real property.
The matter proceeded to a hearing on the cross-motions. As to the purchase of appellant's interest in the real property, appellee introduced canceled checks totaling slightly under $15,000. Appellee testified that the canceled checks, which included payments to appellant's landlord, represented a portion of an estimated $38,000 he had paid to appellant since the dissolution. These payments, according to appellee, represented a purchase of appellant's equity in the real property. Appellee claimed that appellant agreed to this after the dissolution degree had been entered. Appellee also argued that the separation agreement clause which set the 1986 equity value of the real estate should be construed as setting a purchase price by which he could acquire his former wife's interests by subsequent agreement. Appellant admitted receiving the checks and an unknown amount of cash, but denied any equity purchase agreement. She asserted this money was a gift.
Appellee also introduced into evidence his employment contract. Appellee asserted that this contract demonstrated that his pension was unvested in 1986. In fact, appellee maintained that the pension still had not vested in 1993 when he received a lump sum "buy out" from his employer. This is critical because appellee asserts that the phrase referring to his pension "if any" could only refer to a vested plan. Therefore, appellee argued that the pension clause was ambiguous and should be construed against appellant whose attorney drafted the agreement.
The trial court, for the most part, accepted appellee's arguments. Concluding that appellee's pension in 1986 was unvested and its value at that time was, "* * * speculative at best and $0.00 at worst," the court denied appellant's plea to share the lump sum appellee had received. With respect to the real estate, the court found that, "* * * the parties made a de facto
modification of [the separation] agreement, because [appellee] took possession [in 1986]." The court concluded that appellee was entitled to credit for the amount of his canceled checks and the principal amount he had paid on the mortgage since 1986. With these adjustments, the court ordered the property to be sold pursuant to the separation agreement.
From this order, appellant brought this appeal, setting forth the following two assignments of error:
 "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF MRS. LEMLE IN DENYING HER MOTION TO DIVIDE EQUALLY THE NET EQUITY FROM THE SALE OF THE MARITAL RESIDENCE AND INSTEAD, ORDERING THAT MR. LEMLE RECEIVE CREDIT UPON SALE FOR THE PRINCIPAL PORTION OF MORTGAGE PAYMENTS MADE AND FOR OTHER MONEY PAID MRS. LEMLE.
 II. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR BY REFUSING TO GRANT MRS. LEMLE A LUMP SUM JUDGMENT FOR HER SHARE OF MR. LEMLE'S RETIREMENT PACKAGE RECEIVED AS A RESULT OF A CORPORATE BUY OUT."
Appellee filed a cross-appeal in which he raises the following five assignments of error:
 "I. The Lower Court Erred in Awarding Paulette One-half Of the Martial Equity in the Former Marital Residence Computed as of July 1, 1998
 "II. The Lower Court Erred in Failing to Cap Paulette's Equity Interest at $23,870.81
 "III. The Lower Court Erred in Failing to Find That Paulette Has Received the Full Amount of Her Share of the Equity, and More
 "IV. The Lower Court in Failing to Find That Paulette's Legal and Equitable Interest in the Marital Home Should Be Extinguished
 "V. The Lower Court Erred in Finding That Michael Testified That He Paid Paulette Only $23,000.00, and Not $38,000.00
 I.
Turning first to the pension issue, the trial court must be affirmed, if for no other reason than appellant wholly failed to come forward with evidence on this issue. Although attached to appellant's post-hearing brief are documents which purport to show that appellee accepted a 1993 pension "buy out," these documents were neither introduced into evidence nor testified to during the hearing. Additionally, beyond asserting that appellant is entitled to an equal share of the buy out amount accumulated during the marriage, appellant presented no evidence of the value of her interest beyond claiming a fractional amount of the whole. Therefore, appellant failed to carry her burden to present evidence concerning appellee's pension buy out. Accord ingly, appellant's second assignment of error is not well-taken.
 II.
Appellant's remaining assignment of error and all of appellee's cross-assignments of error concern the real estate issue.
It is well-settled that a domestic relations court lacks jurisdiction to revisit the division of property in a divorce or dissolution absent an express reservation of continuing jurisdiction in the final judgment or decree. Schrader v.Schrader (1995), 108 Ohio App.3d 25, 38; Bean v. Bean (1983),14 Ohio App.3d 358, 361-362. Thus, when a separation agreement is incorporated into a final decree without a reservation of juris diction to modify, the court may interpret its own order, but may not change the property division contained therein. Wolfe v.Wolfe (1976), 46 Ohio St.2d 399, 418.
Appellant argues that the trial court's conclusion that the parties reached a de facto modification of the decree is nothing more than a back door effort to modify a judgment for which it possesses no jurisdiction to change.
In this case, the trial court properly interpreted its decree when it stated that both parties were to accrue equity in the property until it was sold pursuant to the separation agree ment and that the net equity (as defined in the agreement) was to be divided equally. However, the trial court strayed when it concluded that the parties entered into a de facto modification of that agreement.
Here again, the state of the evidence controls. Appellant denies such an agreement and appellee never definitively testified that appellant agreed to such an arrangement. Appellee recounted a conversation with a bank loan officer in 1986 which inferentially concerned the purchase of appellant's equity. Appellee also recalls talking to appellant's attorney in 1986. The attorney, according to appellee, advised him that some modification of the decree was possible, if appellant and appel lee agreed. Appellee then testified, "I called her or through him, I don't remember exactly, her and I agreed to that decision. * * *" This is the sum total of appellee's testimony concerning any agreement.
Beyond this, all we know is that at some point appellee occupied the house which, according to the terms of the separation agreement, was for appellant's use. He made all of the payments as required by the decree, and periodically provided appellant with cash, checks, or paid her rent for the next nine years.
However, no major significance can attach to the payments appellee made. These payments are as consistent with paying appellee rent as with an equity buy out. Appellee, after all, had a legal right to occupy the house and appellant was legally obligated to maintain her presence there. It would be reasonable to assume that if appellant was to give up this benefit, she would be compensated. Concomitantly, if appellee was relieved of paying rent for his own residence, he was in no worse of a position in giving the funds to his ex-wife. The fact that many of appellee's early canceled checks were to appellant's landlord for her rent supports this scenario.
We are left only with appellee's testimony that "* * * her and I agree * * *." In context, this testimony may have related to a mortgage buy out, but it is not unambiguous enough to supplant a written decree drawn ostensibly only a few months before this modification was purportedly entered into.[1]
Therefore, assuming for argument's sake only, that the trial court could modify a property division if the parties had entered into a "de facto" new agreement, we conclude that given the state of the evidence in this case, it was error for the court to do so. Consequently, the trial court erroneously modified the original decree to provide for a set off of post-judgment payments made by appellee to appellant. Accordingly, appellant's first assignment of error is well-taken.
 III.
Regarding appellee's cross-assignments of error, the language of the 1986 decree is clear with respect to the proce dure to be employed in the sale of the real estate. The court made no error in enforcing that provision. Accordingly, appel lee's first four assignments of error are not well-taken.
His fifth assignment is moot.
Upon consideration whereof, the judgment of the Fulton County Court of Common Pleas is affirmed, in part, and reversed in part. This matter is remanded to said court for further proceedings consistent with this opinion. Costs to appellee.
 JUDGMENT AFFIRMED, IN PART AND REVERSED, IN PART.
 Peter M. Handwork, P.J.
 Melvin L. Resnick, J.
 James R. Sherck, J.
CONCUR.
[1] We expressly do not reach the questionable effectiveness of an oral agreement concerning real property.