OPINION
Appellant, Roger Gearhart, appeals from the judgment of the Montgomery County Common Pleas Court wherein the Court granted appellee, Anna Gearhart, relief from judgment pursuant to Civ.R. 60(B)(4) and (5).
The Gearharts were married in 1968 and divorced on December 20, 1989. Mr. Gearhart worked for General Motors Corporation throughout the parties' marriage. In the final decree of divorce the trial court stated that "the parties have made the following stipulations regarding their assets:
 3. Retirement — The Qualified Domestic Relations Order will issue on Defendant husband's retirement plan. Plaintiff wife has no retirement plan.
On October 27, 1992, the trial court approved an amended judgment entry denominated as a "Stipulated Qualified Domestic Relations Order." The amended judgment stated in pertinent part:
 WHEREAS, Plaintiff, Anna Gearhart, (hereinafter referred to as Plaintiff and/or Alternate Payee), and Defendant, Roger Gearhart, (hereinafter referred to as Defendant and/or Participant), on the 20th day of December, 1989, entered into an "In Court Agreement", read into the record on that day, providing General Motors Hourly Retirement Program, to the extent of Fifty Percent (50%) of the accrued benefits to be paid by the trustee or plan administrator of said plan to the Defendant when said benefits go into pay status, and from proceeds earned between July 27, 1968 to December 20, 1989; and WHEREAS, said "In Court Agreement" was incorporated into the parties' Final Judgment and Decree of Divorce which was approved by the Court and filed on the 20th day of December, 1989; and
 WHEREAS, said Final Judgment and Decree of Divorce provided that a Qualified Domestic Relations Order, pursuant to the Retirement Equity Act of 1984, would be made by separate decree; (Emphasis ours).
The "in court agreement" actually refers to an appearance in court by the parties on August 18, 1989 wherein Roger Gearhart's counsel read into the record the matters upon which the parties had reached agreement. (Joint Ex. I, p. 2). Counsel said the following in particular:
 There will be a Qualified Domestic Relations Order regarding the husband's retirement at General Motors based on the number of years of marriage and the number of years of employment. And it's his opinion here, I've been told, there's no retirement that the plaintiff has. And assuming that there is no retirement, we do not have an interest in that.
THE COURT: The plaintiff has no retirement?
MRS. GEARHART: No.
 MR. FLANAGAN: Excuse me. There's an income security fund. Have we talked about that or are we going to leave that up to the Judge?
MS. REID: The plaintiff has an income security fund?
MR. FLANAGAN: The defendant has.
 MS. REID: Right. Now I was discussing the retirement, the Qualified Domestic Relations Order regarding what the husband has, that that would be divided based on the number of years of marriage and employment. I was making sure for the record that the wife had no retirement which needed to be divided. I was then going to progress on to the fact that some of the other benefits were a controversy and they were not to be a part of our agreement.
MR. FLANAGAN: Okay.
(Joint Ex. I pp. 4 and 5).
On October 3, 1997, Mrs. Gearhart filed her motion for relief from judgment. She requested that the trial court vacate the previously stipulated qualified domestic relations order (QDRO) filed on October 27, 1992 and substitute a new QDRO. In a memorandum accompanying the motion, appellee stated she began receiving payments under the QDRO amounting to $100 per month, although the divorce decree contemplated payments of $700 per month "in accordance with her former husband's participation in the pension plan while still under the marriage contract."
At the motion hearing, on June 25, 1998 appellant testified that he retired in June 1997 and was receiving monthly retirement benefits of $1900. He acknowledged that his former wife was receiving only $100 per month pursuant to the QDRO. He testified he intended that his wife receive fifty percent of his accrued retirement benefits based on the length of their marriage during his employment with GM. (Tr. 32). It was undisputed that the reason Mrs. Gearhart was receiving such a low monthly benefit was because Mr. Gearhart took an early retirement and was receiving mainly "supplemental benefits" that were not divisible under the Amended QDRO., Appellee testified that she presently receives $88.72 monthly from appellant's pension with General Motors. She testified she thought she would receive $780 because her former husband would have received $1500 had he retired at the time of the parties' divorce. (Tr. 68).
In making her recommendation to the trial court, the magistrate noted that General Motors "broke down Mr. Gearhart's pension into a basic benefit and a supplemental benefit" and based on the Amended QDRO is paying Mrs. Gearhart a percentage of Mr. Gearhart's basic benefit only. The magistrate recommended that the QDRO be modified and specify that Mrs. Gearhart be awarded fifty percent of Mr. Gearhart's basic and supplemental retirement benefits after applying the coverture fraction. The trial court overruled Mr. Gearhart's objections and adopted the magistrate's recommendations.
The magistrate then provided the rationale for her recommendation to grant relief to Mrs. Gearhart:
 The first element that plaintiff must satisfy in order to prevail on a motion to vacate judgment, is a demonstration that she has a meritorious claim if relief is granted. GTE Automatic Elec., Inc. v. ARC Indus., supra. According to R.C. § 3105.171(A)(3)(a) and (C)(1) retirement benefits acquired during the marriage, by either or both spouses, are marital property which is to be divided equally unless such a division is inequitable. In the within case, the parties agreed to equally divide defendant's General Motors retirement benefits which had accumulated during their 21 year marriage which ended in 1989. The divorce decree is silent as to the formula to be used for dividing the retirement benefits. However, the parties' agreement which was read into the court record stated that "There will be a Qualified Domestic Relations Order regarding husband's retirement at General Motors based on the number of years of marriage and the number of years of employment." Defendant acknowledges that this agreement contemplated that the plaintiff would receive one-half of defendant's retirement benefits earned during his marriage to the plaintiff. Using this formula, plaintiff's share of defendant's retirement benefits would be approximately 35%. The plaintiff, however, has received only approximately 5% of the total monthly pension benefits paid by General Motors to defendant. Yet in spite of this apparently inequitable distribution, which is contrary to the statute's directive towards equal division of property, decrees that do not equally divide the marital property are not usually overturned. Furthermore, a QDRO is generally not modifiable unless the court expressly reserves jurisdiction to modify. Schrader v. Schrader, 108 Ohio App.3d 25, 669 N.E.2d 878 (1995). Even ineffective or poor advice from one's own attorney does not provide a defense to the enforceability of an agreement according to at least one court. Vasilakis v. Vasilakis, 1996 WL 340010 No. 68763 (8th Dist. Ct., App., Cuyahoga, June 20, 1996).
 In spite of the above difficulties in establishing a meritorious claim, courts have found ways of granting relief in cases where the results of the finalized QDRO were not in accord with the court's original intent. In Doolin v. Doolin, 1997 WL 614905 (Ohio App. 6 Dist.), the court vacated a finalized QDRO on the theory that it was void ab initio because the original QDRO incorporated an incorrect calculation that did not reflect the court's original holding. The court in In Re Dissolution of Marriage of Seders, 42 Ohio App.3d 155, 156-157 (Ohio App. 9 Dist. 1987) held that relief can be granted when confusion arises over the interpretation of a particular clause of the QDRO. The court may also vacate a final judgment when the original QDRO did not contemplate unforeseen contingencies and leads to absurd and unintended results. Kubinski v. Kubinski, 1995 WL 577835 (Ohio App.3d Dist.). In Kubinski, the Appellate Court sustained the motion to vacate the original judgment because it did not provide for the unseen contingency of forced early retirement benefits.
The magistrate found from the evidence presented that the Amended QDRO differed from the actual agreement of the parties. The magistrate found that the employer's interpretation of the Amended QDRO which resulted in the low monthly benefit to Mrs. Gearhart was clearly an unintended result inconsistent with the parties' agreement.
The magistrate noted the previous judgment should be vacated because appellee's early retirement was unforseen and led to the absurd and inequitable result of appellee receiving only 5% of appellant's monthly retirement benefits instead of the 35% contemplated by the divorce decree. The magistrate noted that the Amended QDRO failed to address the matter of "supplemental benefits" in defining divisible retirement benefits.
Finally, the magistrate noted the trial court had the inherent authority to interpret its own orders if they are vague and unclear, and the court had the power to determine that the retirement benefits subject to division include both basicand supplemental benefits.
The magistrate found that the movant had established grounds for relief pursuant to Civ.R. 60(B)(5) because that provision is intended to reflect the inherent power of the trial court to relieve a party from an injustice. The magistrate noted that the defendant's decision to opt for early retirement undermined the original intention of the parties and the court to divide his retirement benefits in accordance with the guidelines of R.C.3105.171.
Lastly, the magistrate found that the motion was filed in a reasonable time because she filed her motion within a few months after she discovered that her former husband had retired early and she was to receive such a low retirement benefit.
In his first assignment of error, appellant contends the trial court erred in modifying the QDRO filed on October 27, 1992 when no subject matter jurisdiction was reserved by the trial court in the final decree of divorce on the QDRO.
The appellee argues that the trial court did not modify the previous property division but merely clarify its previous order distributing the parties' marital property.
In Weller v. Weller (1996), 115 Ohio App.3d 173, the Lucas County Court of Appeals held the trial court had jurisdiction to revisit the issue of pension benefits and to clarify the meaning of a QDRO and a separation agreement, where the agreement specified that QDRO was to convey to each party one-half of the total sums of the husband's pension plan at the time of distribution but the QDRO stated the husband was to receive 50% of the basic vested monthly pension benefit, and where neither agreement nor QDRO addressed the issue of temporary benefits.
In a per curiam opinion the Court of Appeals made the following observation:
 In our view, and despite the court's use of the term "amend," that motion was construed by the trial court as a motion to clarify. That is, the court resolved the discrepancy between the separation agreement and the QDRO in light of the fact that appellee was receiving both temporary and basic pension benefits. Again, "a trial court may clarify disputed terms of a separation agreement as they relate to a division of such property. Where the disputed clause in the agreement is subject to more than one interpretation, that is, is ambiguous, the court has broad discretion in clarifying the ambiguous language by considering not only the intent of the parties but also the equities involved." In re Avers v. O'Boyle (Sept. 23, 1994), Ottawa App. No. 930T061, unreported, 1994 WL 518134, citing Bond v. Bond (1990), 69 Ohio App.3d 225, 228, 590 N.E.2d 348, 349-350. Accordingly, the trial court had jurisdiction to revisit the issue of the pension benefits and to clarify the meaning of the QDRO and separation agreement. The first assignment of error is therefore not well taken.
See also, In re Dissolution of Marriage of Seders (1987), 42 Ohio App.3d 155
and Saeks v. Saeks (1985), 24 Ohio App.3d 67.
In this case, the parties' in court agreement did not address how the husband's pension would be divided in the event he elected an early retirement. The trial court's failure to address this contingency is similar to the trial court's failure to address the matter of a pension's "temporary benefits" in Wellerv. Weller.
In Tarbert v. Tarbert (Sept. 27, 1996), Clark App. No. 96-CA-0036, unreported, this court suggested that a QDRO is really an order in aid of execution of the final divorce decree which decree should properly divide the parties' pension. In this case the final decree merely stated a QDRO would issue without further elaboration. The Amended QDRO filed in October 1992 mistakenly referred to December 20, 1989 as the date of in the court agreement. The parties don't dispute that their Agreement actually occurred in open court on the day of the parties' divorce hearing on August 18, 1989 at which time appellant's counsel stated her client's retirement would be based on the number of years of marriage and employment. It is clear that the agreement and the final divorce decree failed to sufficiently address how the appellant's retirement would be divided in the event he elected early retirement. Also the amended QDRO does not plainly address the matter of early retirement benefits but merely speaks in terms of "accrued benefits."
Retirement benefits or the right to receive retirement benefits accumulated during the marriage are marital property, which the court must equitably divide and distribute between husband and wife in a divorce. See R.C. 3105.171(A)(3)(a)(i). The court has broad discretion in dividing the benefit. An equal division is presumed under the statute to be an equitable division. In order to reach an equitable result, the court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefits, while disentangling the parties' economic partnership so as to create a conclusion and finality to their marriage. Hoyt v. Hoyt (1990), 53 Ohio St.3d 177,559 N.E.2d 1292. Hoyt stressed that in making a division of the retirement asset the court "must understand the intricacies and terms of any given plan, and if necessary, require both of the parties to submit evidence on the matter to make an informed decision.
In granting Mrs. Gearhart's motion for relief, the trial court specifically noted the Amended QDRO language limiting Mrs. Gearhart's right to participate to "accrued benefits" failed to accomplish what the court "really intended" in order to comply with its statutory mandate to divide the parties' property equitably. In any event, the trial court was in the best position to determine whether its previous order needed clarification as in Weller. Accordingly, the appellant's assignment of error is Overruled.
The judgment of the trial court is Affirmed.
GRADY, P.J,. and FAIN J., concur.
Copies mailed to:
Keith R. Kearney
David S. Peterson
Hon. V. Michael Brigner