OPINION
Donnie W. McGeorge, petitioner-appellant, appeals the Qualified Domestic Relations Order ("QDRO") filed in the Franklin County Court of Common Pleas, Division of Domestic Relations, on September 12, 2000.
On November 17, 1998, appellant and his wife, Nancy L. McGeorge, petitioner-appellee, entered into a separation agreement pursuant to the termination of their marriage by dissolution. On that same day, the petition for dissolution of marriage and the attached separation agreement, as well as other documents, were submitted to the trial court. On December 21, 1998, the trial court issued a judgment entry/decree of dissolution incorporating the terms of the separation agreement that divided the marital assets.
Appellant states in his brief that after the issuance of the judgment entry/decree of dissolution, counsel for both parties endeavored to divide the parties' assets per the conditions of the separation agreement. One of the final provisions of the separation agreement to be carried out was the division of appellant's pension plan with Kroger, as provided in Article III, Section E(2) of the separation agreement, by a QDRO. Appellant contends in his brief that both parties worked to achieve this goal.
On September 12, 2000, counsel for appellee submitted to the court a proposed QDRO that, appellant claims, neither he nor his counsel approved and that had not been qualified by the plan administrator. Counsel for appellant did not sign the proposed QDRO; instead, appellee typed "Submitted on 9/1/00 but not returned" on the signature line for appellant's counsel. The trial court journalized the QDRO the same day with a judgment entry. Between December 21, 1998, and September 12, 2000, the record contains documents such as final appealable order notices, child-support withholding orders, ordinary mail service stubs, and instructions for service. Neither party filed any pleadings with the trial court after the September 12, 2000 judgment.
Appellant appealed the trial court's entry adopting the QDRO and filed an appellate brief. On January 18, 2001, appellee filed a motion to strike appellant's brief on the basis that it cited to hearsay, a motion to strike several exhibits attached to appellant's brief because they were not part of the record below, and a motion to dismiss appellant's appeal. We granted appellee's unopposed motion to strike the exhibits and appellant's brief. We denied appellee's motion to dismiss to the extent that we granted appellant leave to file an amended brief. Appellant filed an amended brief on February 16, 2001, and appellee filed a brief responding to appellant's amended brief on March 6, 2001. On March 16, 2001, appellant then filed a motion to supplement the record, to which appellee responded with a memorandum contra. On April 5, 2001, we filed an entry indicating that we would consider appellant's motion to supplement the record at the time of our determination on the merits. In his amended brief, appellant asserts the following assignment of error:
 The Trial Court Erred as a Matter of Law and Violated Appellant's Due Process Rights in Issuing a Final Entry Qualified Domestic Relations Order that Was Not Approved by Appellant and Which Deviated From the Separation Agreement Filed and Agreed to by the Parties.
We first address appellant's motion to supplement the record pursuant to App.R. 9(E). Appellant seeks to supplement the record with several documents, including appellant's proposed QDRO previously submitted to appellee and various correspondence to appellee's counsel from the Kroger Retirement Administrator and the Kroger Legal Department, indicating that neither appellee's proposed QDRO nor the QDRO entered by the trial court complied with the terms of the plan. Appellant claims supplementation of the record is necessary to demonstrate negotiations took place off the official record and appellee had been previously informed that the plan administrator would reject her QDRO.
Appellee claims in her memorandum contra that appellant's motion to supplement the record attempts to present the same material this court already struck from appellant's original brief. Appellee also argues that since this evidence was never before the trial court, App.R. 9(E) does not permit such new evidence to be supplemented before an appellate court. App.R. 9(E) provides, in pertinent part:
 * * * If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.
Thus, pursuant to App.R. 9(E), the reviewing court may only add material that was not made a part of the original record by accident but was in fact considered by the trial court in rendering its decision. In other words, said material must have been utilized by the trial court in reaching its determination. See Pailet v. Univ. of Cincinnati Hospital (June 30, 1983), Franklin App. No. 82AP-952, unreported. Further, it is axiomatic that an appellate court cannot add material to the record that was not a part of the trial court's proceedings and then decide the appeal on the basis of a new matter. State v. Ishmail (1978),54 Ohio St.2d 402.
In the present case, it is undisputed the documents appellant wishes to supplement the record with were not before the trial court. This is not a situation in which the items were not made a part of the record by mistake or accident; rather, the documents are new materials being submitted to augment the appellate record. App.R. 9(E) does not permit the supplementation of the record under such circumstances. Therefore, we may not consider the new evidence submitted by appellant, and we deny his motion to supplement the record.
Appellant argues in his sole assignment of error that the trial court erred in issuing a final QDRO that was not approved by him and which deviated from the separation agreement filed and agreed to by the parties. Appellant actually presents two different bases for his argument: (1) the trial court erred in failing to make certain the submitted QDRO contained the same terms as set forth in the agreement by the parties; and (2) the trial court denied appellant due process by entering an order effectuating the QDRO without giving him notice or an opportunity for a hearing, especially since the QDRO was not signed by appellant or his counsel.
We will first address appellant's due process argument as it is dispositive of the matter. Due process requires that persons whose property interests are jeopardized by the filing of legal proceedings be given reasonable notice of the pendency of the action and afford them an opportunity to present their objections. Galt Alloys, Inc. v. KeyBank Natl. Assn. (1999), 85 Ohio St.3d 353, paragraph one of the syllabus. Neither party has cited any case law specifically addressing whether a trial court is required to give notice and provide an opportunity to be heard when one party submits a QDRO opposed and unsigned by the other party.
Although not directly on point because it concerns an ex parte amendment of a prior QDRO, the analysis in McClarren v. McClarren (Nov. 18, 1991), Morrow App. No. CA 755, unreported, is persuasive. In McClarren, the appellate court found that the trial court's "amendment" of the prior QDRO affected the husband's interest in the retained portion of his retirement account. Thus, the court of appeals found the husband had a property interest that was affected by the trial court's ex parte order, thereby entitling him to due process protection through notice and an opportunity to be heard. Likewise, in the present case, appellant alleges the substantial modification of the terms of the QDRO from the terms in the separation agreement, including the creation of survivorship rights and cost-of-living increases for appellee, has effectively deprived him of property rights in his portion of his retirement. Thus, appellant alleges to have an affected property interest in the QDRO, and due process would dictate appellant be afforded notice and an opportunity to be heard in a manner determined by the trial court.
Appellee counters that Loc.R. 12 of the Court of Common Pleas of Franklin County, Division of Domestic Relations ("Loc.R.12") is applicable to the following circumstances and that appellant failed to avail himself of the procedures and due process safeguards set forth in that rule. Loc.R. 12 provides, in pertinent part:
 Unless subject to the Uniform Judgment Entry form promulgated by the Supreme Court, or unless the Trial Judge otherwise directs, counsel for the party in whose favor an order, decree, or judgment is rendered, shall within five (5) days thereafter prepare the proper journal entry, and submit it to the counsel for the adverse party, who shall approve or reject the same within three (3) days after the receipt thereof. * * * When the entry is approved by counsel, it shall be so endorsed and presented to the Judge who made the decision for approval and if signed by him or her shall then be filed with the Clerk. If counsel are unable to agree upon the entry, each counsel shall prepare his/her version. Counsel who prepared the initial entry shall forthwith notify the other counsel of when he intends to submit the entry to the Trial Judge, which entry shall be submitted within fourteen (14) days after the decision is rendered. The Trial Judge shall direct which entry shall be filed.
However, after closely reviewing the language of Loc.R. 12, we find it inapplicable to the present situation for several reasons. First, no party was rendered an order, decree, or judgment in his or her "favor." It is difficult to term the separation agreement and decree of dissolution as being rendered in either party's favor so as to activate the duty of either party to prepare a "journal entry." Second, the QDRO submitted by appellee is, by definition, an "order," not a journal entry.
Third, even if the QDRO could be considered a journal entry, appellee did not prepare and submit the QDRO to appellant within five days of the decree of dissolution pursuant to the requirements of Loc.R. 12. Rather, the parties contentiously debated the issue for two years once the decree was entered. It would be inconsistent to allow appellee to take advantage of one provision of Loc.R. 12 while permitting her to ignore its other mandates. The same logic would be true regarding the provision applicable when the parties cannot agree on a journal entry, which requires the party who prepared the rejected "initial entry" to submit it to the court within fourteen days after the decree is entered. Again, appellee did not comply with this provision of the local rule.
Further, Loc.R. 12 does not explain the procedure to be used after the first party submits its rejected initial entry to the court. The rule requires only that the rejected initial entry be filed with the court within fourteen days of the judgment; it does not state when the proposed entry from the opposing party must be filed. That this fourteen-day deadline applies only to the initial entry rather than both parties' proposed entries is apparent in the use of the singular "entry" in the subsequent clause "which entry shall be submitted within fourteen (14) days * * *." Thus, even assuming Loc.R. 12 applies to the present case, such rule does not inform appellant when he was required to submit his proposed order. The rule also does not indicate when the matter would be deemed admitted to the trial court for final determination.
In addition, Loc.R. 12 specifically commands that "each counsel shall prepare his/her version" if the parties cannot agree on the language of the journal entry. Then it provides that "[t]he Trial Judge shall direct which entry shall be filed." Thus, it is clear that Loc.R. 12 contemplates the trial court making a determination based upon a review of the proposed orders submitted by each party. In the present case, the trial court signed and filed the QDRO the same day appellee submitted it to the court. No opportunity or notice was given to appellant by the court that such action was going to be taken and appellant was not permitted to submit his own version per Loc.R. 12. For the foregoing reasons, we find Loc.R. 12 inapplicable to the present case.
The outcome at the trial court level in the present case is particularly troubling given that we can find no case law or rule, including Loc.R. 12, as explained above, that indicates the precise procedure to be taken when parties disagree on the language of a QDRO. Equity and due process would seem to demand both parties be given an opportunity to present their proposed QDRO language and, if necessary, evidence and oral argument. Also adding to the equity considerations in the present case is the fact that both parties admit they have been negotiating the language of the QDRO for two years. Admittedly, appellee maintained a certain degree of risk because she was unprotected for the two years that no QDRO was in place; however, it appears such a situation arose as a result of the conduct of both parties. Given that the disagreement over the terms of the QDRO was bilateral, the lengthy delay in filing a QDRO should not sully either party's hands under an equitable "clean hands" analysis.
Although we can find no applicable rule regarding the procedure parties and courts should follow when a situation arises as in the present case, we do note the procedure utilized by the parties and trial court in Barton v. Barton (June 3, 1997), Franklin App. No. 96APF11-1526, unreported. In Barton, after negotiation by the parties, the husband refused to sign the QDRO prepared by the wife despite the language in the decree ordering the husband to do all things necessary to effectuate the preparation of the QDRO. The decree in the present case has similar language, ordering the parties to deliver all "titles, documents, and things" necessary to effectuate the terms and conditions of the separation agreement upon reasonable request by the other. The procedure utilized by the wife in Barton was to file a motion for contempt, which the parties subsequently agreed to treat as a motion to determine the amount to be paid the wife under the QDRO. The plan administrator was also joined as a party to the action. By agreement of the parties, the matter was submitted to the trial court on briefs and the deposition of the plan administrator of the husband's pension.
Although we do not render an opinion as to whether the procedure used in Barton is the only method available to handle such a situation, the straightforward and candid course of action used by the parties and the court in that case appears to have been available in the present case and would have, if utilized, prevented the present appeal. Similar approaches have been used in several other cases. See, e.g., Allen v. Allen (Mar. 31, 2000), Trumbull App. No. 99-T-0011, unreported (after husband refused to sign QDRO prepared by wife, wife filed a motion with the trial court to compel husband's signature and a hearing was held); Mattice v. Mattice (Dec. 18, 1998), Montgomery App. No. 17157, unreported (when wife disagreed with the terms of the QDRO prepared by husband and refused to sign it, wife filed a motion to compel husband to file a QDRO complying with the decree and a hearing was held); Tarbert v. Tarbert (Sept. 27, 1996), Clark App. No. 96-CA-0036, unreported (after husband refused to sign QDRO prepared by wife that gave her survivorship rights in husband's pension that were not delineated in the decree, wife filed a motion for contempt and a hearing was held).
Therefore, under the specific circumstances and particular facts in the present case, we find that due process required the trial court to give appellant notice and an opportunity to be heard on the issues. Appellant's assignment of error is sustained.
We also note a trial court has the power to clarify and construe its original property division so as to effectuate its judgment. R.C.3105.171(I); Wolfe v. Wolfe (1976), 46 Ohio St.2d 399 . Further, a QDRO is generally modifiable if the court expressly reserves jurisdiction to modify. Schrader v. Schrader (1995), 108 Ohio App.3d 25. In the present case, the QDRO specifically indicated "[t]he Court retains jurisdiction to enforce, revise, modify or amend this Order insofar as necessary to establish or maintain its qualification as a QDRO or to amend this Order for other judiciously determined appropriate reasons." Thus, even in absence of this appeal and regardless of this court's determination on the merits of the appeal, the trial court retains the power to modify the QDRO at any time to correspond with the original intent of the parties or the terms in the separation agreement, to clarify ambiguities in the terms of the decree, or to comply with the retirement benefit plan.
However, upon remand, the trial court should be mindful that the QDRO may not vary from, enlarge, or diminish the distribution of marital property that the court granted in the decree of dissolution because that order, which provided for the QDRO, has since become final. See Tarbert, supra. In our recent decision in Thomas v. Thomas (Apr. 26, 2001), Franklin App. No. 00AP-541, unreported, the trial court added provisions to the parties' QDRO for an award of interest and for an allocation of investment performance even though the decree was silent as to these terms. We vacated the QDRO, finding that a trial court may not add terms to a QDRO that were not in the decree under the guise that it is "interpreting" an "ambiguity" in the decree. We reasoned in Thomas that if the parties or court desired these terms be included in the division of the retirement benefits, they could have provided for such in the decree. This reasoning would be especially true in the present case where the parties negotiated and agreed to the terms of the property division via a separation agreement. We also noted in Thomas that inequity perceived in hindsight does not constitute an ambiguity and is irrelevant when interpreting the meaning of the terms of a decree.
Accordingly, we deny appellant's motion to supplement the record but sustain his assignment of error. The judgment of the Franklin County Court of Common Pleas is reversed, and this case is remanded to that court to vacate its September 12, 2000 QDRO and to determine the proper QDRO to be entered given the terms of the separation agreement and decree of dissolution. The trial court has the discretion as to how to conduct the matter upon remand, whether it decides to hold a hearing and accept evidence, allow the parties to brief the issues, or, at a minimum, permit both parties to submit their respective QDRO's for review.
 _________________ BROWN, J.
LAZARUS and BOWMAN, JJ., concur.