[Cite as *Longo v. Longo*, 2018-Ohio-3535.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| LISA M. LONGO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2017-P-0061** |
| DAVID A. LONGO, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Domestic Relations Division, Case No. 2015 DR 00197.

Judgment: Reversed and remanded.

*Joseph G. Stafford* and *Nicole A. Cruz,* Stafford Law Co., L.P.A., 55 Erieview Plaza, 5th Floor, Cleveland, OH 44114 (For Plaintiff-Appellant).

*Steven Lee August*, 3201 Enterprise Parkway, Suite 130, Beachwood, OH 44122 and *Scott S. Rosenthal,* Schoonover, Rosenthal, Thurman & Daray, 1001 Lakeside Avenue, Suite 1720, Cleveland, OH 44114 (For Defendant-Appellee).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Lisa M. Longo, appeals the trial court's post-decree finding that she has no premarital interest in her three retirement accounts. She maintains that the court exceeded the scope of its jurisdiction in rendering a finding that directly conflicts with an original finding in the final divorce decree. For the following reasons, we reverse and remand for further proceedings.

{¶2} The parties to the underlying action were married for seventeen years and had three children. During the course of the marriage, appellant made contributions to three retirement accounts. Regarding the distribution of her accounts, the final divorce decree provides:

{¶3} "The Plaintiff, Lisa M. Longo, has an interest in the following retirement assets: (1) Mondelez Global 401(k); (2) GSK 401(k); and (3) GSK Cash Balance Pension Plan. As of July 6, 2015, the Mondelez Global Plan had a value of $29,286. As of June 30, 2015, the GSK 401(k) Plan had a balance of $503,467.58 and the GSK Cash Balance Pension Plan had a value of $129,590.95. There are no liens or encumbrances. The Plaintiff's retirement assets shall be divided by coverture fraction calculated from October 3, 1998 (date of marriage) through November 16, 2015 (date of final hearing). *The Plaintiff is to receive her premarital portion of her retirement.* The Defendant, David A. Longo, shall be entitled to one-half of the Plaintiff's retirement assets from October 3, 1998 through November 16, 2015; but the Defendant's award of retirement assets shall be reduced by the sum of Fifty Thousand Dollars ($50,000.00) as and for Plaintiff's interest in Defendant's business, Lon Mar, Inc. (a/k/a Nite-N-Day Cleaners) as previously set forth herein." (Emphasis added).

{¶4} The "premarital portion" sentence in the quoted provision was handwritten into the divorce decree and initialed by both parties. As to appellant's three retirement accounts, the decree further states that her counsel would be responsible for preparing the necessary Qualified Domestic Relations Order ("QDROs") to implement the distribution. In relation to the trial court's continuing authority to modify the foregoing provision, the decree provides:

2

**{¶5}** "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Court retains jurisdiction with respect to the Qualified Domestic Relations Order or Division of Property Order to the extent required to maintain the qualified status and the original intent of the parties. The Court also retains jurisdiction to enter further orders as are necessary to enforce the assignments of benefits to the non-participant as set forth herein, including the recharacterization thereof as a division of benefits of another plan, as applicable, or to make an award of spousal support, if applicable, in the event that the participant fails to comply with the provisions of this order."

**{¶6}** Within fifty days of the issuance of the divorce decree, appellee, David A. Longo, moved the trial court to find appellant in contempt for not complying with various orders. As one basis for the motion, he asserted that appellant's counsel failed to prepare the required QDROs, as expressly mandated by the decree. No judgment was issued disposing of this motion.

**{¶7}** Over the next forty days, appellant's trial counsel submitted three different versions of the proposed QDROs to appellee's counsel for consideration. In each instance, appellee's counsel rejected the proposed QDROs on the grounds that they did not comply with the requirements of the Plan Administrator for the retirement accounts. Consequently, in September 2016, appellee moved the trial court to order appellant to only submit QDROs that have been pre-approved by the Plan Administrator. Appellee did not file any objection to this motion, and the trial court granted it on October 18, 2016.

**{¶8}** Five months later, appellee again moved the trial court to find appellant in contempt for failing to prepare the necessary QDROs. Appellee asserted that, although various discussions had occurred concerning what changes needed to be made to the

3

last set of proposed QDROs, appellant's counsel had not produced any QDROs for review.

{¶9} A hearing on the second contempt motion was scheduled for June 2017. When appellant moved for a continuance, appellee filed a brief in opposition, noting that a year had already elapsed since the issuance of the divorce degree and he still had not received any benefits from her retirement accounts. Notwithstanding this argument, the trial court granted the continuance and rescheduled the hearing for September 2017.

{¶10} During the interim period, appellee moved the trial court to allow his trial counsel to prepare the QDROs. In opposing this motion, appellant submitted a new set of proposed QDROs to the trial court. However, instead of reviewing the substance of the new set, the trial court issued a judgment resolving the "QDROs" dispute. The first paragraph of this judgment, dated August 18, 2017, states:

{¶11} "This matter came before the Court upon the Court's own review of the file. After review, the Court finds that the pensions of the parties have no premarital portions. Accordingly, Attorney Steven L. August, counsel for the Defendant, is ordered to prepare the necessary Qualified Domestic Relations Orders in order to effectuate the division."

{¶12} Ten days after issuance of the foregoing judgment, the trial court issued a nunc pro tunc entry modifying the second sentence of the foregoing quote. That is, the term "retirement accounts" was substituted for the word "pension." Moreover, the phrase "per the Divorce Decree" was added to indicate what retirement accounts were being referenced.

{¶13} In appealing the August 18, 2017 judgment, appellant assigns the following as error:

{¶14} "The trial court erred as a matter of law and abused Its discretion by issuing a judgment entry which is Inconsistent with the terms and considerations of the June 2, 2016 Judgment Entry of Divorce."

{¶15} As a preliminary point, appellee argues that this appeal must be dismissed because appellant did not base the appeal upon the correct judgment. He asserts that, instead of appealing the August 18, 2017 judgment, appellant should have brought the appeal from the subsequent nunc pro tunc entry.

{¶16} The basic purpose of a nunc pro tunc entry is to correct clerical mistakes in a prior judgment. *State v. Blankenship*, 4th Dist. Ross No. 13CA3364, 2013-Ohio-5261, ¶7. Therefore, the effective date of a nunc pro tunc entry relates back to the date of the original judgment, and the notice of appeal must be filed within thirty days of the original judgment. *Id.*; *Morris v. Conant*, 11th Dist. Lake No. 12-270, 1988 WL 112375, (Oct. 21, 1988). To this extent, the original judgment is still the substantive entry from which the appeal must be brought.

{¶17} Here, the trial court's nunc pro tunc entry did not modify its analysis in the August 18, 2018 judgment. Thus, the entry did not recognize any new right or deny an existing right. Instead, the nunc pro tunc entry changes the language the trial court employed to refer to appellant's retirement accounts. Since the entry was used to correct a clerical mistake in the original judgment, the entry was a legitimate nunc pro tunc entry. For this reason, appellant properly based her appeal upon the August 18, 2017 judgment.

{¶18} Under her sole assignment, appellant asserts that the appealed judgment must be reversed because the trial court exceeded its authority in finding that she did not have any premarital interest in her three retirement accounts. She maintains that, since

5

this finding directly conflicts with the prior statement in the final decree, it constitutes an impermissible modification of the property distribution.

{¶19} Initially, this court disagrees with appellant's characterization of the trial court's new finding on the "premarital interest" issue as a modification. In the divorce decree, the trial court only stated that appellant would receive any premarital interest in the retirement accounts. The court did not make any finding regarding whether the extent of such an interest had already been established by appellant.

{¶20} If the trial court's August 18, 2017 judgment had ordered that appellant was no longer entitled to receive her premarital interest in her retirement accounts, such an order would constitute a modification of the divorce decree. However, in stating in its subsequent judgment that appellant has no premarital interest, the court was only making a finding as to the extent to which the prior order was applicable. In this respect, the court was only enforcing its prior order in the divorce decree.

{¶21} Retirement benefits are marital assets that are subject to distribution as personal property. *Schrader v. Schrader*, 108 Ohio App.3d 25, 28, 669 N.E.2d 878 (6th Dist.1995), citing *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 178, 559 N.E.2d 1292 (1990). As a general proposition, the distribution of property in a final divorce decree cannot be altered in a subsequent proceeding unless "upon the express written consent or agreement to the modification by both spouses." R.C. 3105.171(I). However, the statutory prohibition has no effect upon the trial court's basic authority to interpret and enforce the distribution orders in its prior judgment. *See Kistler v. Kistler*, 11th Dist. Trumbull No. 2003-T-0060, 2004-Ohio-2309, ¶14-15.

{¶22} Nevertheless, even though the trial court did not exceed its jurisdiction in

6

rendering a new finding on the "premarital interest" issue, the record is void of any evidence upon which the trial court could have made such a finding. Following the issuance of the divorce decree, no evidentiary hearing was held. Similarly, although both parties filed multiple motions during this period, neither attached evidentiary material regarding the "premarital interest" issue. As to the latter point, appellant's last set of proposed QDROs, submitted directly to the trial court, did not address the amount of her premarital interest.

{¶23} Appellee maintains that the finding of no premarital interest was warranted because of appellant's failure to present evidence regarding the extent of that interest. However, appellee's post-decree motions do not raise this as a reason for rejecting appellant's proposed QDROs. Accordingly, the issue of the extent of appellant's premarital interest in her retirement accounts was not properly before the trial court for final determination.

{¶24} In the absence of any explanation by the trial court setting forth the basis of its decision, and the lack of evidence supporting the decision, appellant's sole assignment has merit. The judgment is reversed, and the case is remanded for further proceedings.


COLLEEN MARY O'TOOLE, J., concurs,

CYNTHIA WESTCOTT RICE, J., dissents with a Dissenting Opinion.


_____


7

CYNTHIA WESTCOTT RICE, J., dissents with a Dissenting Opinion.

{¶25} Because I disagree with the majority's disposition, I respectfully dissent.

{¶26} The parties' June 2, 2016 divorce decree provided that wife would receive any premarital interest in her retirement accounts, but *did not find that she had established the amount of any such interest.* "'The party seeking to establish that property * * * is separate rather than marital bears the burden of proving this to the trial court.'" *Nemeth v. Nemeth*, 11th Dist. Geauga No. 2007-G-2791, 2008-Ohio-3263, ¶50, quoting *Vergitz v. Vergitz*, 7th Dist. Jefferson No. 05 JE 52, 2007-Ohio-1395, ¶12. Thus, in order to be entitled to a premarital interest, wife had the burden to prove the extent of that interest. Further, the decree ordered wife's counsel to prepare all QDROs necessary to divide wife's retirement accounts.

{¶27} As of July 18, 2016 (six weeks after the decree was entered), wife's attorney had still not submitted QDROs. As a result, husband filed a motion to find wife in contempt. On August 22, 2016, wife's counsel submitted proposed QDROs, but husband's attorney filed a notice of their rejection because they did not comply with the plan administrator's requirements. In the notice, husband's attorney said he had sent a letter to wife's attorney, which set forth the reasons why the QDROs were deficient and provided sample QDROs for wife's counsel's use in revising the QDROs. On August 31, 2016, wife's attorney submitted revised QDROs, but husband's attorney rejected them because they still did not comply with the administrator's requirements. On September 14, 2016, husband filed a notice of the plan administrator's rejection of wife's QDROs. In that same filing, husband moved for an order requiring wife to submit to the court only QDROs that were pre-approved by the plan administrator, and the court granted that

motion.

{¶28} On November 23, 2016, during a phone conference between court and counsel, *wife's counsel agreed to provide husband's attorney with statements identifying the balances in wife's retirement accounts at the time of the parties' marriage to evidence her premarital interest, but wife's counsel never provided such evidence to husband's attorney*.

{¶29} On January 13, 2017, husband's attorney, by letter, asked wife's attorney for the revised QDROs, but wife's attorney did not respond. On January 30, 2017, husband's attorney sent a follow-up letter to wife's attorney, but he still did not submit the revised QDROs.

{¶30} On February 23, 2017, during a phone conference between the court and counsel's paralegals, wife's attorney's paralegal agreed to revise the QDROs per the plan administrator's instructions. However, on March 20, 2017, wife's counsel called husband's attorney and *refused to make the modifications required by the administrator*. As a result, on March 29, 2017, husband's attorney filed a motion to find wife in contempt for failing to file pre-approved QDROs. The contempt hearing was set for September 6, 2017.

{¶31} Meanwhile, on June 30, 2017, one year after the court originally ordered wife to prepare the QDROs, husband moved the court, inter alia, for an order to authorize his attorney to prepare QDROs *that would not include a premarital portion for wife*. In that filing, husband asserted that wife's counsel had agreed to submit evidence of wife's alleged premarital interest, but then failed to do so. Wife's attorney filed another set of QDROs on July 7, 2017. However, these QDROs, on their face, were not pre-approved

by the plan administrator before submission, as required by the trial court, and *did not address the amount of wife's alleged premarital interest.* On August 18, 2017, the court granted husband's motion, stating in its amended entry:

> **{¶32}** After review, the Court finds that *the retirement accounts of the parties * * * have no premarital portions.* Accordingly, Attorney Steven L. August, counsel for the [husband], is ordered to prepare the necessary [QDROs] to effectuate the division of the retirement benefits.  (Emphasis added.)

**{¶33}** Thus, for 14 months between June 2016 and August 2017, wife failed to establish the amount of any premarital interest.  This failure was raised by husband in his June 30, 2017 motion for authority in which he disputed the existence of wife's alleged premarital interest and asserted that wife's attorney had failed to produce evidence of such interest.  In wife's brief in opposition, she did not argue or present any evidence in support of a premarital interest.  In finding wife had no such interest, the trial court implicitly found that she failed to meet her burden to prove such interest.  Further, in this same period, wife's attorney repeatedly failed to submit QDROs that complied with the administrator's requirements and the court's orders. Thus, the trial court's judgment authorizing husband's attorney to prepare QDROs that excluded any premarital portion for wife was amply supported by the record.

**{¶34}** For these reasons, I would affirm the trial court's judgment and I respectfully dissent.