DOOLIN, Appellant,

v.

DOOLIN, Appellee.

[Cite as *Doolin v. Doolin* (1997), 123 Ohio App.3d 296.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–96–311.

Decided Sept. 30, 1997.

Order Denying Reconsideration
Nov. 6, 1997.

*Gregg D. Hickman,* for appellant.

*Nicholas Aharon Boggioni,* for appellee.

_____

MELVIN L. RESNICK, Presiding Judge.

This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division.

Appellant, Ruth Doolin, and appellee, Richard F. Doolin, were divorced by decree on December 19, 1991. The relevant portion of the decree incorporates a provision of the parties' separation agreement and concerns the distribution of appellee's pension benefits. It reads as follows:

"IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the pension to which the Defendant, Richard F. Doolin, is vested through Chrysler Jeep Corporation, shall become subject to a Qualified Domestic Relations Order wherein the parties shall split the proceeds 50% each based upon the Defendant's pension as valued and vested on October 17, 1991, such that any growth in qualifying years on the part of the Defendant shall not be credited to be divided by this Qualified Domestic Relations Order but shall be credited to Defendant only and to be included in his pension check."

The court also noted that, as of April 30, 1991, appellee would receive, at age sixty-five, $638.16 per month in pension benefits from Chrysler Jeep Corporation.

Appellee retired on January 1, 1993. On September 8, 1993, appellant filed a motion asking the trial court to, among other things, order appellee to sign a Qualified Domestic Relations Order ("QDRO") submitted by her attorney.

In an April 6, 1994 referee's report, the referee found that "the parties agree that: (1) the parties' Qualified Domestic Relations Order against Defendant's [Appellee's] prior plan at Chrysler shall be redrafted * * *." The referee recommended that counsel for the parties file a judgment entry with regard to settlement of issues related to the QDRO and any alleged arrearages. The referee also found appellee's retirement benefits per month from January 1, 1993 to March 1, 1993 were $1,609.97, from March 1, 1993 to November 1, 1993 were $1,692.49 and from November 1, 1993 until death were $858.13. Appellee filed timely objections to the referee's report and recommendations.

On May 25, 1994, appellant filed two separate QDROs. One QDRO allocated $726.56 from appellee's "Jeep–UAW Noncontributory Retirement Income Plan" to appellant. The other provided appellant with $239.26 per month from appellee's "Jeep Corporation Salaried Employees' Retirement Plan." Both orders indicated they were made "[b]y the consent and agreement of the parties." However, neither appellee nor his attorney signed the proposed orders. Nonetheless, the domestic relations judge signed the entries. They were journalized on May 27, 1994. On July 11, 1994, the trial court overruled appellee's objections to the referee's April 6, 1994 report and recommendations and affirmed and adopted the same.

On September 2, 1994, appellee filed, *pro se*, a motion "To Change *Quadro* [*sic* ] to Agree with Divorce Decree." Appellee argued the QDROs were "totally wrong" and, as a result, appellant was receiving a larger share of his pension than

she was entitled to. Appellant filed a motion to dismiss for failure to state a claim upon which relief could be granted. She contended that the trial court lacked the jurisdiction to modify the QDROs and that appellee's motion was barred by the doctrines of collateral estoppel and *res judicata.*

On January 10, 1995, appellee filed a motion to vacate the QDRO pursuant to Civ.R. 60(B). He argued that, pursuant to the divorce decree, appellant was entitled to fifty percent of his pension benefits as valued on "October 31, 1991 [*sic*]." According to appellee, that value was $815.41 per month. Thus, appellee concluded that the QDROs must award appellant a total of $407.71 per month, not $726.56 per month. He alleged that he was "surprised" when he discovered the amounts awarded in the QDROs.

Appellee filed a motion to dismiss the motion to vacate, maintaining that appellee failed to satisfy the requirements of Civ.R. 60(B). In response, appellee filed a memorandum in support of his motion and affidavit in which he asserted that appellant was entitled to only a total amount of about $320 per month from his pension benefits.

In a judgment journalized on January 8, 1996, the trial court granted appellee's motion to vacate the May 25, 1994 QDROS. The court held that the QDROs reflected an order different from the one set forth in the divorce decree in that the QDROs included sums accumulated in appellee's pension plans after October 17, 1991. An amended QDRO was filed and signed and journalized on August 8, 1996.

After a hearing on July 30, 1996, the trial court awarded appellee $13,955.25 plus costs and postjudgment interest. This appeal followed.

Appellant sets forth the following assignment of error:

"The trial court abused its discretion and erred as a matter of law when it modified the qualified domestic relations order without jurisdiction."

Initially, appellant challenges the trial court's grant of appellee's motion to vacate on the ground that the requirements of Civ.R. 60(B) were not satisfied. Next, she contends that the trial court lacked the subject matter jurisdiction to modify the QDROs. Finally, she asserts that the award of $13,955.25 is against the manifest weight of the evidence.

For the following reasons, we affirm the trial court's judgments.

Pension or retirement benefits accumulated during a marriage are subject to property division in a divorce proceeding. *Erb v. Erb* (1996), 75 Ohio St.3d 18, 20, 661 N.E.2d 175, 177–178. Because it is a division of marital property, a domestic relations court lacks continuing jurisdiction to modify a division of pension or retirement benefits. *Wolfe v. Wolfe* (1976), 46 Ohio St.2d

399, 75 O.O.2d 474, 350 N.E.2d 413; *Bean v. Bean* (1983), 14 Ohio App.3d 358, 361–362, 14 OBR 462, 465–467, 471 N.E.2d 785, 789–791. Nevertheless, in a case where a pension or retirement benefit is vested but unmatured, a court may reserve continuing jurisdiction over the distribution of this asset. *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 182, 559 N.E.2d 1292, 1297–1298. Failure to reserve jurisdiction deprives the trial court of the ability, that is subject matter jurisdiction, to modify any award of pension benefits in the decree of divorce or dissolution. *Schrader v. Schrader* (1995), 108 Ohio App.3d 25, 28, 669 N.E.2d 878, 879–880. A lack of subject matter jurisdiction may be raised for the first time on appeal or it may be raised *sua sponte* by the court at any stage of the proceedings. *Fox v. Eaton Corp.* (1976), 48 Ohio St.2d 236, 238, 2 O.O.3d 408, 409, 358 N.E.2d 536, 537.

In the present case, the trial judge, by adopting the May 27, 1994 QDROs as her judgment, modified the division of appellee's pension benefits as agreed to by the parties and set forth in the divorce decree. That is, the court did not use the value of the pension benefits as of October 17, 1991. There is no reservation of continuing jurisdiction over this asset that would permit the court to make such a modification. *Schrader v. Schrader,* 108 Ohio App.3d at 28, 669 N.E.2d at 879–880. Accordingly, the two QDROs of May 27, 1994 were void *ab initio* and could be vacated by the trial court pursuant to its inherent authority. *Patton v. Diemer* (1988), 35 Ohio St.3d 68, 518 N.E.2d 941, paragraph four of the syllabus. Consequently, appellee's motion to vacate the void judgment did not have to comply with the requisites of Civ.R. 60(B). *United Home Fed. v. Rhonehouse* (1991), 76 Ohio App.3d 115, 123, 601 N.E.2d 138, 142–143; *Dairyland Ins. Co. v. Forgus* (1989), 58 Ohio App.3d 78, 79, 568 N.E.2d 1232, 1232–1233. Therefore, appellant's arguments on this issue are without merit.

Although appellant failed to separately assign and brief any other alleged error, she also argues that the trial court's judgment with regard to the amount of the overpayment of pension benefits is against the manifest weight of the evidence.

Judgments supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. *C.E. Morris v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261 376 N.E.2d 578, syllabus.

Appellant contends that the trial court interjected the issue of spousal support at the hearing on July 30, 1996. However, when read in context, it is clear that the statement cited by appellant was mistakenly made by the judge and that the court was plainly stating that the sole issue before it was the amount of the overpayment of pension benefits to appellant. On that issue, testimony

and documentary evidence were offered to show that appellant was still receiving the pension benefits, a total of $965.92 per month, specified in the two May 27, 1994 QDROs and that $13,955.25 would be overpaid during a period of twenty-five months (from August 1996 to August 1996). Accordingly, the trial court's judgment on this issue is not against the manifest weight of the evidence.

For these reasons, appellant's sole assignment of error is found not well taken. The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Appellant is ordered to pay the costs of this appeal.

*Judgment affirmed.*

HANDWORK and SHERCK, JJ., concur.