OPINION
Appellant Larry Ferris appeals the decision of the Fairfield County Court of Common Pleas, Domestic Relations Division, concerning a qualified domestic relations order ("QDRO") filed by the court on August 24, 2000. The following facts give rise to this appeal. On May 20, 1998, appellant and Appellee Gaynell Ferris signed a separation agreement that divided the parties' marital assets and liabilities, allocated parental rights and established spousal support. The separation agreement also contained a provision concerning division of appellant's retirement plan and provided as follows:
 12. RETIREMENT BENEFITS. Husband maintains a pension plan through the Lucent Technologies Management Pension Plan with a value of $62,623.69 as of December 1, 1995. The nonmarital portion of this asset equals $4,814.89, leaving a marital value of $57,808.80. The parties shall execute a QDRO which, upon approval by the Court, shall direct Husband's plan administrator to transfer 50 percent (50%) interest in the marital portion of the plan, as outlined above, to Wife. Separation Agreement at 5.
On June 9, 1998, the parties filed with the court a petition for dissolution of marriage. The parties appeared in court on July 9, 1998, and the trial court granted a final decree of dissolution approving and incorporating the separation agreement. In its judgment entry/decree for dissolution of marriage, the trial court stated that "[t]he parties hereto are specifically ordered to fulfill each and every term, condition, and obligation imposed by this judgment entry/decree of divorce [sic] which this court makes the specific order of this court." Judgment Entry/Decree for Dissolution of Marriage, July 9, 1998, at 2. On March 10, 2000, appellee filed a motion for contempt against appellant due to his failure to sign a QDRO for the pension plan. The trial court scheduled the matter for a hearing on June 2, 2000. On this date, the parties appeared in court. However, rather than conducting the hearing, the trial court suggested that the parties attempt to reach a settlement. The parties were unable to resolve the issues regarding the QDRO terms, specifically, the issue of the value of appellee's marital share. Thereafter, on July 26, 2000, appellee's counsel sent a letter to the trial court judge and a proposed QDRO for the pension plan. Appellee's proposed QDRO provided that the value of her share of the plan is "* * * equal to the actuarial equivalent of Fifty Percent (50%) of the Marital Portion of the Participant's Accrued Benefit * * *." QDRO at 2. Appellant's counsel responded to appellee's counsel's letter and replied that the QDRO should be based on the value of the pension plan as agreed to by the parties in the separation agreement. On August 24, 2000, the trial court filed appellee's proposed QDRO. Appellant timely filed his notice of appeal and sets forth the following assignments of error for our consideration:
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT AUTHORIZED AND FILED THE PLAN QDRO OF AUGUST 24, 2000 WITHOUT PROPER SUBJECT MATTER JURISDICTION OVER THE ISSUE.
 II. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT AUTHORIZED AND FILED THE PLAN QDRO OF AUGUST 24, 2000 THAT STATED A DIFFERENT VALUE OF APPELLEE'S MARITAL PORTION OF THE PLAN FROM THE VALUE EXPRESSLY AGREED UPON BY THE PARTIES IN THEIR SEPARATION AGREEMENT AND JUDGMENT ENTRY OF JULY 9, 1998.
 III. THE TRIAL COURT FAILED TO HOLD A HEARING ON THE ISSUE OF THE PROPER PLAN QDRO THAT WAS TO BE FILED IN THIS MATTER.
This case has been assigned to this court's accelerated docket.
 I, II
Appellant, in his second assignment of error, argues that the trial court erred in filing the proposed Qualified Domestic Relations Order (QDRO) since it increased the value of appellee's marital portion of the plan as that portion had been set forth in the Separation Agreement. In his first assignment appellant argues that the trial court lacked subject matter jurisdiction to file appellee's proposed QDRO because that action resulted in a modification of the parties' property division. We disagree with appellant's premise that the proposed QDRO adopted by the trial court modifies the separation agreement of the parties. Pension or retirement benefits accumulated during a marriage are subject to property division in a divorce proceeding. Erb v. Erb (1996), 75 Ohio St.3d 18,20. R.C. 3105.171(I) specifically provides that "[a] division or disbursement of property or a distributive award made under this section is not subject to future modification by the court." "Nevertheless, in a case where a pension or retirement benefit is vested but unmatured, a court may reserve continuing jurisdiction over the distribution of this asset." Doolin v. Doolin (1997), 123 Ohio App.3d 296, 300, citing Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 182. A trial court's failure to reserve jurisdiction deprives the court of subject matter jurisdiction to modify any award of pension benefits in the decree of divorce or dissolution. Doolin at 300, citing Schrader v. Schrader (1995),108 Ohio App.3d 25, 28. We find that the language of the proposed Qualified Domestic Relations Order (QDRO) adopted by the trial court does not differ from the language of the separation agreement. As stated in appellee's brief, "[i]t is customary and, indeed mandatory, that the parties in either a dissolution or a divorce case determine the present value of the defined benefit plan based upon some assumed date for the valuation." (Appellee's brief, page 7) In fact, R.C. 3105.171(G) requires the trial court to make written findings of fact to support its determination that the marital property has been equitably divided and to specify the dates it used in determining what constitutes "during the marriage." The parties in the case sub judice set forth the agreed present value of appellant's pension and the agreed ending date of the parties' marriage. However, as pointed out by appellee, the pension in question is a defined benefit plan, which generally means that the covered employee shall receive a set monthly amount of money at the time of retirement based on his earnings and upon his years in the plan. This is not the same as a defined contribution plan, in which the value of the plan is whatever has been contributed into it. The present value of a defined benefit plan can be estimated by an actuary using an assumed future date of retirement. The actuary determines what the defined benefit will be at the time of the assumed retirement date. The actuary then determines what amount of money would need to be invested today in order to obtain the defined benefit at the assumed retirement date. Generally, the actuary uses a conservative rate of interest in computing this present value. A present value may be assigned through this formula however the actual value that will be subject of the court's equitable distribution can only be determined by future contingencies such as the participant's age and pension service credits at retirement. Layne v. Layne (1992), 83 Ohio App.3d 559. For instance, some defined benefit plans calculate one's retirement income as a percentage of the average of one's three highest income years, but that percentage increases if one works over twenty years with the employer. As stated in Layne, "[w]hen the amount to be paid can only be determined at the later point of maturity at retirement, a current order should divide and distribute only the right to receive a share of the unmatured pension benefit, reserving determination of exact amounts to the later time when they are known". Layne, p. 566. In the case sub judice, fifty percent of the marital portion cannot truly be known until the pension matures. The use of the coverture fraction in the QDRO to specify a spouse's share is the only fair way to divide a defined benefit pension. The numerator of the coverture fraction is the number of years the appellant participated in the pension plan during the marriage and the denominator is the total number of years the appellant participated in the plan. We find that the parties set forth the present value of the pension because property generally must be assigned a value. The parties further set forth the ending date of their marriage as December 1, 1995, the date of their separation. We further find that the parties agreed that the appellee should receive fifty percent of the marital portion of the plan to be secured by a QDRO which would specify the marital portion by using the coverture fraction. Any other interpretation of the parties' Separation Agreement is not logical based on how defined benefit plans work. The actual value of a 50% interest in the marital portion of the plan can only be determined through the use of a coverture fraction applied to the benefits when those benefits are available for pay-out. Based on the foregoing, we find that the trial court did not increase or otherwise modify the value of appellee's marital portion of the plan from what was set forth in the Separation Agreement. Appellant's first and second assignments of error are, therefore, overruled.
 III
Appellant, in his third assignment of error, maintains that the trial court erred in failing to hold a hearing prior to authorizing and filing the Plan QDRO. Appellant specifically contends that "[s]ince the trial court decided for some reason to alter the [Separation] Agreement, it was required to give the parties notice and hold a hearing on the matter, . . ." Based on this court's above determination that the trial court did not alter the value of appellee's marital portion of the plan from the value appellee was to receive pursuant to the Separation Agreement, appellant's third assignment of error is moot.
Appellant's third assignment of error is, therefore, overruled. For the foregoing reasons, the judgment of the Court of Common Pleas, Domestic Relations Division, Fairfield County, Ohio, is hereby affirmed.
Edwards, J. Farmer, P.J., concurs Wise, J., dissents.