OPINION
{¶ 1} Appellant, Charles Cunningham, appeals the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, ordering one-third of the coverture portion of any non-contributory pension plan in which he had an interest at his retirement.
 {¶ 2} On July 15, 1994, the parties were granted a decree of dissolution. On December 22, 1994, appellant and appellee entered into an agreed Qualified Domestic Relations Order ("QDRO"). The QDRO divided appellant's General Motors Pension between both parties as the benefits incurred during the marriage constituted marital assets. Appellant contends that his pension contains two parts: Part A, or non-contributory benefits and Part B, or contributory benefits. The 1994 QDRO gave appellee "33 1/3% of [appellant's] Part A, Non-Contributory benefits accrued as of the date of [appellant's] retirement."
 {¶ 3} On or about December 3, 1996, the QDRO was submitted by appellee's attorney to the General Motors Pension Administration Center. General Motors responded on March 31, 1997, indicating that the QDRO was defective because: (1) it failed to contain appellee's birth date; (2) it failed to state the percentage share appellee was to receive of any early retirement benefits; and (3) the plan did not provide for the designation of a beneficiary and, as such, the alternate payee cannot designate a beneficiary of his/her interest in the plan.
 {¶ 4} Apparently, neither appellee nor her counsel replied to General Motor's advisement. Consequently, when appellant retired in 2002, he discovered that the QDRO had never been filed against his benefits. Appellant retained an attorney who forwarded a letter and proposed QDRO to appellee's counsel addressing the issues set forth in the 1997 letter from General Motors.
 {¶ 5} On February 26, 2002, appellee's attorney prepared a new QDRO and sent the same to appellant's attorney. This latest QDRO indicated that appellee shall be entitled to 1/3 of all non-contributory benefits in appellant's pension, including those benefits in Part A and certain portions of the benefits in Part B.
 {¶ 6} On or about May 10, 2002, appellee filed a motion ("Stipulated QDRO") in which she requested a determination of the rights of the parties relative to the General Motors Salaried Retirement Program. On or about July 9, 2002, appellant filed his response to appellee's motion regarding the QDRO and motion to dismiss. According to appellant, attorneys for both parties met in chambers with the trial court on or about July 16, 2002. However, appellant alleges the conference in chambers was notably informal: neither the parties nor a court reporter were present. There was no hearing held, no testimony taken, no evidence introduced, and no stipulations of fact made. Nonetheless, on July 25, 2002, the trial court issued its judgment entry determining the "parties' respective rights" in appellant's employer-provided pension and retirement plans. In this entry, the court modified the previous QDRO by awarding appellee one-half of the coverture portion of any non-contributory pension plan that appellant had an interest in as of his retirement. This judgment entry was replaced on August 16, 2002, by an "Agreed Nunc Pro Tunc Judgment Entry" reducing the award from one-half of the coverture portion to one-third of any coverture portion of any non-contributory pension plan.[1]
 {¶ 7} Although appellant contends that the original 1994 QDRO contemplated only Part A non-contributory benefits, the court determined, without a hearing, that appellee was entitled to any non-contributory benefits, including Part A and those non-contributory benefits available in Part B. From this judgment, appellant filed this timely appeal.
 {¶ 8} Appellant raises three assignments of error for our consideration:
 {¶ 9} "[1.] The trial court lacked subject matter jurisdiction to modify the judgment entry — qualified domestic relations order issued eight years previous pursuant to the parties' decree for dissolution.
 {¶ 10} "[2.] The trial court erred as a matter of law and abused its discretion when it vacated the QDRO without vacating the entire decree of dissolution.
 {¶ 11} "[3.] The trial court erred as a matter of law and abused its discretion by failing to hold an evidentiary hearing, thereby denying appellant his constitutional rights to due process."
 {¶ 12} Before addressing the merits of appellant's contentions, a review of the relevant legal standards is appropriate. The current matter is based upon a 1994 Decree of Dissolution. The cornerstone of dissolution law is mutual consent and agreement. Knapp v. Knapp (1986),24 Ohio St.3d 141, 144. As such, an order regarding division or disbursement of marital property may not be modified in the future by the court. R.C. 3105.171(I). Courts are typically without jurisdiction to modify, as opposed to invalidating entirely, the separation agreement.Ratliff v. Ratliff (Aug. 6, 1998), 10th Dist. No. 97APF10-1294, 1998 Ohio App. LEXIS 3614, at 15.
 {¶ 13} It is well settled that pension and retirement benefits are marital assets subject to division upon divorce or dissolution. Wellerv. Weller (1996), 115 Ohio App.3d 173, 178, citing, Hoyt v. Hoyt (1990),53 Ohio St.3d 177, 178. However, to properly divide these assets the domestic court must use a tool known as a QDRO. A QDRO creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefit payable with respect to a participant under the plan. Gordon v. Gordon
(2001), 144 Ohio App.3d 21, 24, citing, Employee Retirement Income Security Act of 1974, Section 206(d)(3)(B)(i)(I). A QDRO is generally not modifiable unless the court has expressly reserved jurisdiction to do so. Schrader v. Schrader (1995), 108 Ohio App.3d 25, 28.
 {¶ 14} While a trial court does not have continuing jurisdiction to modify or amend a marital property division incident to a divorce or dissolution decree, it has the power to clarify and construe its original property division so as to effectuate its judgment. See R.C. 3105.171(I),Doolin v. Doolin (1997), 123 Ohio App.3d 296, 299-300, citing Wolfe v.Wolfe (1976), 46 Ohio St.2d 399. In sum, where a trial court clarifies its original marital property division incident to a divorce or dissolution, it has continuing jurisdiction. Alternatively, where the court changes the terms or consequences of the original division, without an express reservation of jurisdiction, it engages in a modification and thus subject matter jurisdiction fails. Doolin, supra at 299-300, citing Wolfe, supra.
 {¶ 15} Because appellant's first and third assignments are mutually related and dispositive of the current appeal, we shall address them together. In his first assignment of error, appellant argues that the trial court's 2002 judgment entry modified the 1994 QDRO without a jurisdictional reservation. Moreover, in his third assignment, appellant maintains, and appellee concedes, that the lower court erred by failing to hold an evidentiary hearing regarding its findings of fact. We agree as to both assignments.
 {¶ 16} Specifically, in its 2002 judgment entry, the lower court found that "the parties agree that Part B is, in part, non-contributory." However, appellant alleges that the retirement program in question involves two categories of benefits: "non-contributory", known as Part A, and "contributory", known as Part B. In its introductory paragraph, the 1994 QDRO, drafted by appellee's counsel, states: "This cause is before the Court for determination of rights and orders regarding the interests of the parties in the General Motors Salaried Retirement Program — Part A or any amended or subsequent Plan to which benefits of aforementioned are rolled over or transferred. ***."
 {¶ 17} The 1994 QDRO specifically gives appellee rights in appellant's Part A pension benefits only. These rights are defined within the instrument as "non-contributory" benefits; however, the original QDRO neither incorporates, nor mentions appellee's rights in Part B benefits. As such, any inclusion of Part B benefits in the 2002 judgment entry, non-contributory or otherwise, modifies the agreed order into which the parties entered in 1994.[2] Because the 2002 judgment entry modifies the 1994 QDRO, the lower court lacked subject matter jurisdiction over the current matter. Therefore, appellant's first and third assignment of error has merit.
 {¶ 18} For purposes of guidance, we hold that the initial introductory paragraph of the 1994 QDRO represents the parties' intent: namely, permitting appellee to obtain rights in appellant's Part A benefits only. This intent is manifest consistently throughout the entire order. Therefore, any attempt to derive the inclusion of Part B benefits from the 1994 order will act as a modification, for which the court lacks subject matter jurisdiction. Thus, we remand the current matter to the trial court for the narrow purpose of completing the 1994 QDRO pursuant to the March 31, 1997 letter from General Motors' Pension Administration Center.
 {¶ 19} The foregoing analysis makes it unnecessary to reach appellant's second assignment of error. That is, because we have determined the lower court modified the 1994 QDRO without jurisdiction, the original order remains unaffected. Thus, we need not address whether the court erred in vacating the QDRO without vacating the dissolution.
 {¶ 20} For the foregoing reasons, the decision of the Trumbull County Court of Common Pleas, Domestic Relations Division is reversed and remanded for a hearing consistent with this opinion.
JUDITH A. CHRISTLEY and WILLIAM M. O'NEILL, JJ., concur.
[1] It bears noting that appellant's attorney explicitly reserved an objection to the content of the August 16, 2002 "Agreed Nunc Pro Tunc Judgment Entry" by approving the entry "as to form only."
[2] The only jurisdiction reservation in 1994 QDRO specifically states: "The Court retains limited jurisdiction to amend this order only for the purpose of meeting any requirements to create, conform, and maintain this order as a Qualified Domestic Relations Order pursuant to the Retirement Equity Act of 1984." A careful reading of this clause indicates a narrow reservation of jurisdiction so that the court might maintain the effectiveness of the QDRO in view of the dynamic and ever-evolving climate of federal legislation. We do not therefore read this clause as an express reservation of jurisdiction to modify the terms of the QDRO or the division of the underlying pension benefits.