WILSON, APPELLANT, *v.* WILSON, APPELLEE.

[Cite as *Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056.]

(No. 2006–1814—Submitted September 11, 2007—Decided November 20, 2007.)

LUNDBERG STRATTON, J.

{¶ 1} The question before the court today is whether a divorce decree that provides for the issuance of a qualified domestic relations order ("QDRO") is a final, appealable order before the QDRO is issued. Because we hold that it is, we reverse the judgment of the court of appeals and remand the cause for further proceedings.

### Facts

{¶ 2} Douglas J. Wilson, plaintiff-appellant, and Jennifer R. Wilson, defendant-appellee, were married on October 9, 1993. Douglas filed a complaint for divorce on July 20, 2004, and Jennifer filed a timely answer and counterclaim for divorce.

{¶ 3} At the time of the divorce, Douglas had an unvested pension. With regard to this pension, the divorce decree provided: "The defendant shall receive one-half of the coverture value of the plaintiff's unvested Teamsters pension if and when it becomes vested. This division shall be through a qualified domestic relations order (QDRO) prepared and signed at the time of the vesting. The cost of the preparation of the QDRO shall be equally shared between the parties."

{¶ 4} Douglas appealed, and the Court of Appeals for Wayne County dismissed the case for lack of a final, appealable order. We accepted jurisdiction over Douglas's discretionary appeal. *Wilson v. Wilson*, 112 Ohio St.3d 1418, 2006-Ohio-6712, 859 N.E.2d 557.

### Analysis

{¶ 5} Pension or retirement benefits earned during the course of a marriage are marital assets and a factor to be considered in the division of property. *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 178–179, 559 N.E.2d 1292. The court of appeals in this case held that because no QDRO had been journalized due to the fact that plaintiff's pension was unvested, the divorce decree was not a final, appealable order. Although the trial court held that the unvested Teamster's pension is a marital asset, the court of appeals held that it is speculative whether a QDRO may ever be properly journalized because its filing is contingent on whether the pension vests at some time in the future. Both parties disagree with this holding.

{¶ 6} A QDRO is a qualified domestic relations order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." Employee Retirement Income Security Act of 1974 ("ERISA"), Section 1056(d)(3)(B)(i)(I), Title 29, U.S.Code and Section 414(p)(1)(A)(i), Title 26, U.S.Code. "The QDRO must be drafted to include very specific information with explicit instructions to the plan administrator. It is

then the responsibility of the plan administrator to review the order of the trial court and determine whether it constitutes a QDRO pursuant to Section 414(p), Title 26, U.S.Code." (Footnote omitted.) *Hoyt,* 53 Ohio St.3d at 180, 559 N.E.2d 1292, citing ERISA, Section 1056(d)(3)(C)(i) through (iv), Title 29, U.S.Code. Further, Section 1056(d)(3)(D), Title 29, U.S.Code, provides that a domestic relations order is qualified only if the order does not require (i) the plan to provide any type of benefit, or any option, not otherwise provided by the plan, (ii) the plan to provide increased benefits (determined on the basis of actuarial value), and (iii) the payment of benefits to an alternate payee that are required to be paid to another alternate payee under another order previously determined to be a QDRO.

{¶ 7} The QDRO implements a trial court's decision of how a pension is to be divided incident to divorce or dissolution. The determination whether an order is final is important because Section 3(B)(2), Article IV of the Ohio Constitution provides that "[c]ourts of appeals shall have jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals."

{¶ 8} When an action includes multiple claims, Civ.R. 54(B) permits a trial court to enter final judgment as to fewer than all the claims. Civ.R. 75(F) states as follows with regard to judgments in cases of divorce, dissolution, annulment, and legal separation:

{¶ 9} "For purposes of Civ.R. 54(B), the court shall not enter final judgment as to a claim for divorce, dissolution of marriage, annulment, or legal separation unless one of the following applies:

{¶ 10} "(1) The judgment also divides the property of the parties, determines the appropriateness of an order of spousal support, and, where applicable, either allocates parental rights and responsibilities, including payment of child support, between the parties or orders shared parenting of minor children;

{¶ 11} "(2) Issues of property division, spousal support, and allocation of parental rights and responsibilities or shared parenting have been finally determined in orders, previously entered by the court, that are incorporated into the judgment;

{¶ 12} "(3) The court includes in the judgment the express determination required by Civ.R. 54(B) and a final determination that either of the following applies:

{¶ 13} "(a) The court lacks jurisdiction to determine such issues;

{¶ 14} "(b) In a legal separation action, the division of the property of the parties would be inappropriate at that time."

{¶ 15} Thus, in the context of a divorce proceeding, Civ.R. 75(F) prohibits a trial court from entering a final judgment unless (1) the judgment divides the parties' property, determines the appropriateness of an order of spousal support, and allocates parental rights and responsibilities, including the payment of child support, or (2) the judgment states that there is no just reason for delay and that the court lacks jurisdiction to determine any issues that remain. Accordingly, a divorce decree is a final, appealable order, regardless of whether it calls for a QDRO that has not yet issued; the QDRO merely implements the divorce decree.

{¶ 16} A QDRO does not in any way constitute a further adjudication on the merits of the pension division, as its sole purpose is to implement the terms of the divorce decree. Therefore, it is the decree of divorce that constitutes the final determination of the court and determines the merits of the case. After a domestic relations court issues a divorce decree, there is nothing further for the court to determine.

{¶ 17} We quote with approval language from *Lamb v. Lamb* (Dec. 4, 1998), Paulding App. No. 11–98–09, 1998 WL 833606, *2:

{¶ 18} "[T]he QDRO in this case does not affect a substantial right of the parties in that it merely mimics the order of the original divorce decree. The original divorce decree was the order which established the [parties'] property distribution and provided for an equitable pension division. This is the order which determined the rights of the parties. The QDRO in this case differs in no way from the divorce decree and is itself a ministerial tool used by the trial court in order to aid the relief that the court had previously granted. * * * Indeed a QDRO may not vary from, enlarge, or diminish the relief that the court granted in the divorce decree, since that order which provided for the QDRO has since become final."

{¶ 19} A divorce decree completely divides the property. The trial court should determine in the judgment of divorce the value of the pension and the percentage to give to each spouse, which may include, as was done here, expert testimony regarding the value of the unvested pension and the correct percentage discount for the time remaining until the pension becomes vested. The QDRO is merely a tool used to execute the divorce decree.

{¶ 20} We note that if we were to adopt the reasoning of the court of appeals in this case, the parties could be forever barred from bringing an appeal because if plaintiff does not work for the time required to make his pension vest, then the QDRO would never issue, and an appeal would be impossible. We hold that a divorce decree that provides for the issuance of a QDRO is a final, appealable order, even before the QDRO is issued. Consequently, the court of appeals erred in dismissing the case for lack of a final, appealable order. Accordingly, we

reverse the judgment of the court of appeals and remand the cause to the court of appeals for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

MOYER, C.J., and PFEIFER, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LANZINGER, J., concurs in judgment only.

---

Johnson & Helmuth and R.J. Helmuth; and Deborah J. Monaco, for appellant.

Richard Law Office, L.L.C., and James M. Richard, for appellee.