{¶ 18} Although I agree with the majority's resolution based on the very narrow fact pattern presented in this case, I write separately to emphasize the need to ensure that when a trial court exceeds its authority with respect to entry of a QDRO, the aggrieved party has a remedy by way of appeal, and to note the practical difficulties created by the characterization of a QDRO as a ministerial act.
 {¶ 19} In Wilson v. Wilson, 116 Ohio St.3d 268, 2007-Ohio-6056, the Supreme Court of Ohio characterized a QDRO as an order that "merely implements the divorce decree." Id. at ¶ 15. The Court explained:
 "A QDRO does not in any way constitute a further adjudication on the merits of the pension division, as its sole purpose is to implement the terms of the divorce decree. Therefore, it is the decree of divorce that constitutes the final determination of the court and determines the merits of the case. After a domestic relations court issues a divorce decree, there is nothing further for the court to determine." Id. at ¶ 15-16.
The Court also cited with approval the opinion of the Third District Court of Appeals in Lamb v. Lamb (Dec. 4, 1998), 3d Dist. No. 11-98-09, at *2. In that case, the Court of Appeals stated:
 "While the QDRO was related to a special proceeding in that it originated from a divorce action, the QDRO in this case does not affect a substantial right of the parties in that it merely mimics the order of the original divorce decree. The original divorce decree was the order which established the parties['] property distribution and *Page 13 
provided for an equitable pension division. This is the order which determined the rights of the parties. The QDRO in this case differs in no way from the divorce decree and is itself a ministerial tool used by the trial court in order to aid the relief that the court had previously granted." Lamb at *2.
Ministerial acts are undertaken without the exercise of discretion, or, in other words, are performed "`in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done.'" Maloney v. Rhodes (1976), 45 Ohio St.2d 319,323, quoting Black's Law Dictionary (4 Ed.), at 1148. For this reason, the Lamb court concluded that "a QDRO may not vary from, enlarge, or diminish the relief that the court granted in the divorce decree, since that order which provided for the QDRO has since become final."Lamb at *2.
 {¶ 20} As the Lamb court noted, it follows from the characterization of a QDRO as a ministerial act that, in the normal course of events, there is no right to appeal entry of a QDRO. This characterization poses two difficulties that are not easily resolved. When a trial court exceeds its ministerial authority with respect to a QDRO by varying from, enlarging, or diminishing the relief granted in the divorce decree, it seems by implication that the QDRO — although ministerial in theory — must be considered an order that affects a substantial right in a special proceeding for purposes of jurisdiction. See, generally, R.C.2505.02(B)(2). This presents practical problems in itself, because it would require an examination of the divorce decree in conjunction with the QDRO to determine whether *Page 14 
jurisdiction to review the matter exists in the first place. A second problem is presented when a divorce decree has been entered, but entry of a QDRO is delayed, whether by action of the parties or by the limited resources of the domestic relations courts. A party to the case is then faced with pursuing an extraordinary writ to compel entry of the QDRO which, even at the trial court level, may be so bound up in the merits as to make a remedy impractical even though the QDRO is characterized as a ministerial function.
 {¶ 21} Therefore, although I agree with the majority's resolution of this case, I concur in judgment only to express my concern overWilson's characterization of QDROs as ministerial in nature. *Page 1