[Cite as *Reising v. Reising*, 2012-Ohio-1097.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

DANIEL REISING                         :

    Plaintiff-Appellant                                                    :
                                    C.A. CASE NO.    2010
                                     CA 92

v.                                      :

                            :        T.C. NO.
                            07-DR-989

DONNA REISING                          :     (Civil appeal from
                               Common Pleas Court,
    Defendant-Appellee                                                 :
                               Domestic Relations Division)

                                       :

. . . . . . . . . .

**O P I N I O N**

Rendered on the   16th   day of    March   , 2012.

. . . . . . . . . .

PATRICIA N. CAMPBELL, Atty. Reg. No. 0068662, 2190 Gateway Drive, Fairborn, Ohio 45324
    Attorney for Plaintiff-Appellant

FRANK M. PAYSON, Atty. Reg. No. 0055165, 120 W. Second Street, Suite 400, Dayton, Ohio 45402
    Attorney for Defendant-Appellee

. . . . . . . . . .

FROELICH, J.

{¶ 1}    Daniel Reising appeals from an order of the Clark County Court of Common Pleas, Domestic Relations Division, which denied his motion to vacate a Military Qualifying Court Order ("MQCO").

I.

{¶ 2}    Daniel and Donna Reising were married on April 7, 1995.   In a contested action for divorce that Daniel[1] commenced, the parties stipulated, and the trial court found, that their marriage terminated on October 5, 2007.

{¶ 3}    The parties had the right to participate in several retirement pension plans, which the court divided between them in identical terms.  The present appeal concerns the following provisions of the divorce decree dividing Donna's military retirement pension plan:

**MS. REISING'S MILITARY RETIREMENT BENEFITS**

As stated, Ms. Reising is a captain in the United States Air Force and began her service in 1985.  Therefore, approximately 10 years of her military service accrued prior to the parties' marriage and some portion has accrued after the de facto termination date of the parties' marriage on October 5, 2007. The portion which accrued during the parties' marriage is, in fact, marital property and subject to equitable division by the Court.

In consideration of the duration of the parties' marriage; the assets and

---

[1] For clarity, we will refer to the parties by their first names.

liabilities of the parties; the liquidity of the property to be distributed; the economic desireability of retaining assets intact; the tax consequences of the property division herein; the costs of sale, if any; and any other relevant factors set forth in O.R.C. 3105.171(F), as they may apply to the facts herein, this Court finds that it is both fair and equitable to award to Mr. Reising one-half of Ms. Reising's military retirement benefits which accrued during the tenure of the parties' marriage.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the Plaintiff, Daniel Reising, shall be awarded one-half of the military retirement benefits of the Defendant, Donna Reising, which accrued between the date of the parties' marriage on April 7, 1995 and the de facto termination of the parties' marriage on October 5, 2007, including all proportionate cost of living benefits and survivorship entitlement.

**IT IS FURTHER ORDERED** that the Defendant, Donna Reising, shall provide to the Plaintiff, all documents necessary to effectuate his award in her military retirement benefits and it is **ORDERED** that each of the parties shall have an affirmative duty to sign all documents necessary to effectuate the foregoing.

**{¶ 4}** A MQCO is a form of qualified domestic relations order required by the uniformed military services in order to effectuate a judicial division of rights in a military pension retirement plan. After the divorce decree was filed, Daniel submitted a proposed MQCO to the court. Paragraph six of that proposed MQCO indicated that Daniel was to

receive "an amount equal to 50 percent (50%) of the marital portion of the Member's [Donna's] disposable military retired pay under the plan as of her benefit commencement date." Daniel's proposed MQCO stated that the "marital portion" would be determined by multiplying the Member's disposable military retired pay by a fraction (less than or equal to 1.0), the numerator of which is the number of months of the Member's creditable service in the plan earned during the marriage (which shall be defined as 149.93 months), and the denominator of which is the total number of months of the Member's creditable service in the plan as of her date of retirement.

{¶ 5} In May 2009, the trial court held a hearing on the language to be used in the MQCO. In a subsequent entry, the trial court addressed Daniel's proposed MQCO, noting that it set forth a coverture formula, in which the value of an asset is determined by calculating the ratio of the number of years of employment during the marriage to the total years of employment. Layne v. Layne, 83 Ohio App.3d 559, 615 N.E.2d 332 (2d Dist.1992). The trial court rejected Daniel's proposal, stating: "The Divorce Decree in this case does not set forth a coverture formula nor does it mention, as part of that formula, the total years of service of the plan participant as part of a coverture formula[;] rather, it only awards to each of the parties one-half of that which accrued between the relevant dates of April 7, 1995, *** and *** October 5, 2007." The court continued: "While it is true that in many cases this Court does utilize a coverture formula when allocating property rights between the parties as they may relate to pension entitlements, it clearly did not do so in this case."

{¶ 6} The trial court further found that it no longer had jurisdiction

to modify the divorce decree, but that it could properly clarify the meaning of the decree. The court ordered counsel for both parties to submit proposed MQCOs consistent with its entry. Both parties filed proposed MQCOs. Daniel's proposed MQCO stated that he was awarded 50 percent of Donna's disposable military retirement pay that she would have received had she retired with a base pay of $5577.80 and 21 years of creditable service on October 5, 2007. It further stated that he would continue to receive payments "during the joint lives of the parties."

{¶ 7} On November 12, 2009, the court entered an order adopting the MQCO proposed by Donna, which contained the following provisions concerning division of Donna's military retirement plan:

6. **Amount of Payments:** This Order awards to Former Spouse 50% of the disposable military retired pay which accrued during the period of marriage which ended on 5 October 2007, and which the Member would have received had the Member retired with a retired pay base of $2980.68 and with 21 years of creditable service on October 5, 2007.

* * *

8. **Duration of Payments**: The Former Spouse is eligible for 50% of Member's disposable military requirement benefits which accrued between the date of the parties' marriage on April 7, 1995 and the de facto termination of the parties' marriage on October 5, 2007, *or the equivalent of this same 150 months of payments, after which all such payments will terminate.* Former Spouse shall apply for his share of benefits at least 90 days prior to Member's

retirement. All such benefits shall immediately terminate upon the death of either Member [or] Former Spouse. (Emphasis added.)

{¶ 8} On January 29, 2010, Daniel filed a motion to vacate the MQCO, arguing that the MQCO is void because it is inconsistent with the divorce decree. He asserted that the MQCO "improperly divests [Daniel] of his right to [Donna's] retirement pursuant to the termination of benefits after 150 months."

{¶ 9} The trial court overruled Daniel's motion. The court found that the terms of the MQCO were not inconsistent with the divorce decree, that the MQCO clarified the decree, and, thus, the MQCO was not void. It held that, because the MQCO was a final appealable order, the motion to vacate could not be used as a substitute for a timely appeal. The court concluded that Daniel's motion was barred by res judicata. The court further found that Daniel's motion sought relief akin to Civ.R. 60(B) and that such relief was unavailable.

{¶ 10} Daniel appeals from the trial court's denial of his motion to vacate.

II.

{¶ 11} In his assignment of error, Daniel claims that the trial court lacked jurisdiction to issue the MQCO, because it was inconsistent with the divorce decree, and that a motion to vacate was the proper vehicle to challenge the void MQCO.

{¶ 12} Under R.C. 3105.171(A)(3)(a)(i), a spouse's retirement benefits that are acquired during the marriage are marital property. In divorce proceedings, the trial court is tasked with determining what constitutes marital property

and dividing such marital property equitably between the spouses. R.C. 3105.171(B). An equal division of marital property is presumptively equitable. R.C. 3105.171(C)(1). A division and disbursement of property ordered pursuant to R.C. 3105.171 "is not subject to further modification by the court except upon the express written consent or agreement to the modification by both spouses." R.C. 3105.171(I).

{¶ 13} A qualified domestic relations order ("QDRO") is a tool used to execute the portion of the divorce decree that divides pension benefits. Wilson v. Wilson, 116 Ohio St.3d 268, 2007-Ohio-6056, 878 N.E.2d 16, ¶ 7, 19. Therefore, "a QDRO may not vary from, enlarge, or diminish the relief that the court granted in the divorce decree, since that order which provided for the QDRO has since become final." Id. at ¶ 18, quoting Lamb v. Lamb, 3d Dist. Paulding No. 11-98-09, 1998 WL 833606 (Dec. 4, 1998). See also Tarbert v. Tarbert, 2d Dist. Clark No. 96-CA-36, 1996 WL 555039 (Sept. 27, 1996).

{¶ 14} We have held that when a QDRO is inconsistent with the divorce decree in any of the respects identified in *Wilson*, "the trial court lacks jurisdiction to issue it, and it is void." *Bagley v. Bagley*, 181 Ohio App.3d. 141, 2009-Ohio-688, 908 N.E.2d 469 (2d Dist.), following *Hale v. Hale*, 2d Dist. Montgomery No. 21402, 2007-Ohio-867. Daniel relies on *Bagley* for his assertion that the MQCO issued by the trial court is void and, therefore, he properly challenged the MQCO in his motion to vacate.

{¶ 15} The question presented to us is whether the MQCO filed in November 2009 was a modification of the decree filed in May 2008 or a clarification.

The trial court was correct in holding that it did not have authority to modify a property division contained in a final appealable order (i.e., the divorce decree). If the MQCO is a modification of the decree, however, then, according to *Bagley* and *Hale*, it is void ab initio since the trial court was without jurisdiction to issue it. (And, the trial court thus had the authority to consider Daniel's motion to vacate an allegedly void MQCO.) If, on the other hand, the MQCO is a clarification, Daniel should have appealed the MQCO in 2009 and his 2010 motion is barred, as found by the trial court.

{¶ 16} As Judge Fain expressed in his concurrence in *Bagley*, we question the wisdom of "jurisdictionalizing error," as we did in *Hale* and *Bagley* and other appellate districts have done with respect to R.C. 3105.171(I). *See*, *e.g*., *Butcher v. Butcher*, 8th Dist. Cuyahoga No. 95758, 2011-Ohio-2550; *Blaine v. Blaine*, 4th Dist. Jackson No. 10CA15, 2011-Ohio-1654, ¶ 17; *Kachmar v. Kachmar*, 7th Dist. Mahoning No. 08 MA 90, 2010-Ohio-1311, ¶ 50; *Himes v. Himes,* 5th Dist. Tuscarawas No. 2004-AP-020009, 2004-Ohio-4666; *Doolin v. Doolin*, 123 Ohio App.3d 296, 704 N.E.2d 51 (6th Dist.1997). However, we need not reconsider *Bagley* and *Hale* in this case. Upon review of the MQCO, we agree with the trial court that the divorce decree did not establish a coverture formula for the award of Donna's military retirement benefits and that the MQCO was merely a clarification – not a modification – of the decree.

{¶ 17} The decree awarded Daniel "one-half of the military retirement benefits * * * which accrued between the date of the parties' marriage on April 7, 1995 and the de facto termination of the parties' marriage on October 5, 2007, including all proportionate cost of living benefits and survivorship entitlement." It is not disputed that

the marriage and Donna's military service overlapped for 12.5 years or 150 months.

{¶ 18} We addressed similar "accrual" language in *Benfield v. Benfield*, 2d Dist. Montgomery No. 19363, 2003-Ohio-5968, which was cited by the trial court. *See also Schetter v. Schetter*, 2d Dist. Clark No. 2010 CA 35, 2011-Ohio-246 (language in separation agreement and dissolution decree giving wife 50% of military pension "earned by" husband during the marriage "unambiguously evidences the intent of the parties to limit [wife's] interest to the value of the pension funds as they existed on the date of the termination of the marriage"); *Jackson v. Hendrickson*, 2d Dist. Montgomery No. 20866, 2005-Ohio-5231; *Pohl v. Pohl*, 2d Dist. Montgomery No. 20001, 2004-Ohio-3790.

{¶ 19} In *Benfield*, the parties' separation agreement included a section addressing Mr. Benfield's future military retirement. It included a provision that Ms. Benfield would receive "50% of Husband's retired pay accrued through October 1989." In a subsequent paragraph, the agreement stated that "Husband after his date of retirement shall pay the Wife no less than a sum equal to 50% of his gross retired pay as it exists October 1, 1989." Ms. Benfield's share included "all increases Husband may receive in rank, cost of living, merit increases, et cetera for both her SBP Annuity and retirement pay share as of October 1, 1989." *Benfield* at ¶ 3.

{¶ 20} Upon Mr. Benfield's retirement, the Defense Finance and Accounting Service ("DFAS") required a clarifying order that awarded Ms. Benfield either a fixed dollar amount or a fixed percentage of Mr. Benfield's military pension as of the date of his retirement. Ms. Benfield filed a motion for such an order. After a

hearing, a magistrate adopted a coverture fraction method of computation (advocated by Ms. Benfield) and found that she was entitled to proportionate share of any growth in the retirement benefits, even after October 1, 1989. The trial court sustained objections to the magistrate's decision, finding that Ms. Benfield was not entitled to benefit from increases to Mr. Benfield's rank or pay after October 1, 1989. The trial court held that the agreement "specifically limits wife's portion to 50 percent of the defendant's gross retired pay as it existed on October 1, 1989."

{¶ 21} On review of Ms. Benfield's appeal, we concluded that the trial court "reasonably, and correctly, read the foregoing language as entitling Ms. Benfield to fifty percent of all retirement benefits accrued as of October 1, 1989, and nothing more." *Benfield* at ¶ 8. We stated that Ms. Benfield's interpretation of the language regarding increases in rank, cost of living, etc., as an "expansion" of her right to later-acquired retirement benefits rather than as a "limitation" on her entitlement to benefits, was "manifestly unreasonable." *Id.*

{¶ 22} In a footnote, we further commented that Mr. Benfield's appellate brief demonstrated that it was easy to calculate the portion of his pension that accrued from the commencement of his military career until October 1, 1989, and to award Ms. Benfield half of that amount. *Id.* at ¶ 8, fn. 2. Indeed, the trial court had approved the military retirement benefit calculation of 2.5% x $3,529.50 (Mr. Benfield's rank monthly payment on October 1, 1989) x 17.3333 (years of service as of October 1, 1989), and awarded Ms. Benfield half of that amount. Ms. Benfield thus received $764.73 of Mr. Benfield's monthly military retirement income.

{¶ 23}   The Reisings' divorce decree grants Daniel one-half of Donna's military retirement benefits that accrued between April 7, 1995 and October 5, 2007. This is an award of the value of those 150 months; as the trial court said, it is not a coverture formula, which is a percentage of Donna's retirement benefit based on her total years in the military. The decree did not mention or use a coverture formula analysis, and in its May 2009 entry, the trial court expressly rejected that such an approach had been adopted. Rather, the divorce decree divided the retirement amount accrued between specific dates.

{¶ 24}   Paragraph six of the MQCO sets forth the variables needed for the military to calculated a "hypothetical" retired pay award. The value of Donna's military retirement benefits between April 7, 1995 and October 5, 2007, would be calculated by determining Donna's retirement benefits had she retired on October 5, 2007, using the base pay and years of service in the MQCO, and then determining the portion that accrued during the 150-month marriage. At that time of the divorce, Donna had 22.5 years of military service, of which 12.5 years overlapped with the marriage. In other words, 56 percent (12.5 divided by 22.5) of Donna's military service, as of October 5, 2007, had occurred during the marriage. Thus, under the divorce decree, Daniel was entitled to half of 56 percent of Donna's military retirement benefits, calculated as of October 5, 2007. (In contrast, the MQCO proposed by Daniel in October 2009 would have given him half of Donna's military retirement benefits, as valued of October 5, 2007, without accounting for the fact that she had served ten years before the parties married.)

{¶ 25}   The MQCO found that Daniel "is eligible for 50% of Member's

disposable military retirement benefits which accrued * * * [during the 12.5 years of marriage], or the equivalent of this same 150 months of payments, after which all such payments will terminate." This language mirrors the terms of the divorce decree, but adds "or the equivalent of this same 150 months of payments, after which all such payments will terminate."

{¶ 26} Daniel construes the MQCO as saying that he only receives 150 months of payments, which would indeed be a modification of the divorce decree, which provides that he receives the value of the benefits accrued *during* those 150 months. Although this might be a reasonable interpretation if read alone (and Donna may have subjectively intended such an interpretation), we do not find this reading to be reasonable in the context of the divorce decree and the other provisions of the MQCO. Reading the documents as a whole, the additional clause does not provide that Daniel's payments would terminate after 150 months by a calendar. Rather, Daniel's payment would cease once he receives "the *equivalent* of the *same* 150 months" (i.e., the value he was awarded in the decree or its equivalent, perhaps in a lump sum, if such an option is available).

{¶ 27} We find no fault with the trial court's conclusion that the MQCO clarified the divorce decree. The addition of the phrase "or the equivalent of this same 150 months of payments, after which all such payments will terminate" merely articulated that payments would cease once the value of benefits accrued during the marriage had been paid. Because the MQCO constituted a clarification of the divorce decree, it was not void under *Bagley* and *Hale*, even if we were to continue to apply those cases.

{¶ 28} Moreover, even assuming that the phrase "or the equivalent of this same 150 months of payments, after which all such payments will terminate" were a modification and were void under *Bagley* and *Hale*, it appears that the long-term outcome would be the same. That is, we would reverse the trial court and remand the case for the entry of a MQCO that was consistent with the divorce decree. Given the trial court's explanation that a coverture formula was not intended and our understanding that the 150 months is a quantitative, rather than a temporal, limitation, the trial court would simply issue a new MQCO that makes this clarification even clearer. That new MQCO would not contain a temporal limitation, as such a limitation is not part of the divorce decree.

{¶ 29} Civ.R. 60(B) motions for relief from judgment "cannot be used as a substitute for a timely appeal or as a means to extend the time for perfecting an appeal from the original judgment." *Key v. Mitchell,* 81 Ohio St.3d 89, 91, 1998-Ohio-643, 689 N.E.2d 548; *Harris v. Anderson,* 109 Ohio St.3d 101, 102, 2006-Ohio-1934, 846 N.E.2d 43, at ¶ 9. "[W]here the remedy of appeal is available to a party, and where the issues raised in a motion for relief from judgment are those which could properly have been raised on appeal, a motion for relief from judgment will be denied." *Burroughs Real Estate Co. v. Zennie R. Heath*, 8th Dist. Cuyahoga No. 40476, 1980 WL 354563, *2 (Mar. 20, 1980), cited by *Smith v. Bd. of Health*, 4th Dist. No. 92-CA-2095, 1993 WL 256323, *4 (June 28, 1993). "Logically, therefore, every properly raised ground for relief from judgment necessarily involves granting relief for a reason that could not be considered in an appeal of the underlying judgment." *Beechler v. Beechler*, 95 Ohio App.3d 121, 125, 641 N.E.2d 1189 (12th Dist.1994).

{¶ 30}     Because the MQCO constituted a clarification of the divorce decree, if Daniel wished to challenge the discretion or propriety of the trial court's adoption of the MCQO, a direct appeal  – not a Civ.R. 60(B) motion –  was the proper outlet to do so.   Daniel did not appeal from the MQCO.   Accordingly, the trial court did not err in concluding that Daniel was barred from challenging the MQCO through his motion to vacate.

{¶ 31}     Daniel's assignment of error is overruled.

III.

{¶ 32}     The trial court's judgment will be affirmed.

. . . . . . . . . .

CANNON, J., concurs.

GRADY, P.J., dissenting:

{¶ 33}     I respectfully dissent from the decision of the majority, and would instead reverse the domestic relations court's order denying Daniel Reising's motion to vacate the Military Qualifying Court Order the court ordered, because the Military Qualifying Court Order is void as the court lacked jurisdiction to order it.

{¶ 34}     "Marital property" includes "the retirement benefits of the spouses . . . acquired by either or both spouses during the marriage."   R.C. 3105.171(A)(3)(a)(i).   In divorce proceedings the court must divide the parties' marital property equitably.   R.C. 3105.171(B).   An equal division is presumed to be equitable. R.C. 3105.171(C)(1).

{¶ 35}     "[A} retirement plan is an investment made by both spouses

during the marriage to provide for their later years." *Layne v. Layne*, 83 Ohio App.3d 559, 567, 615 N.E.2d 332 (2d Dist.1992). When dividing retirement benefits, "the trial court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit * * *." *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 179, 559 N.E.2d 1292 (1990). On that basis, if the funds in a retirement account are presently available, the court may order a present distribution to the non-participating spouse of his or her marital share. If the funds are not presently available and the "benefit" is instead an expectation payable in installments in future years, the court should award the non-participating spouse his or her marital share of that benefit, payable when the participating spouse receives payments of the benefit and for as long as he or she receives such payments. *Layne*.

{¶ 36} R.C. 3105.171(I) states:

A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses.

{¶ 37} A military Qualifying Court Order ("MQCO") is a form of QDRO. "A QDRO is a qualified domestic relations order 'which creates or recognizes the existence of an alternative payee's right to, or assigns to an alternative payee the right to, receive all or a portion of the benefits payable with respect to a participant under a [retirement] plan * * *.'" (Internal citation omitted.) *Hoyt* at 179-180.

{¶ 38} In *State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio-252, 922 N.E.2d 214, at ¶ 19, the Supreme Court wrote:

"The QDRO implements a trial court's decision of how a pension is to be divided incident to divorce or dissolution." *Wilson v. Wilson,* 116 Ohio St.3d 268, 2007-Ohio-6056, 878 N.E.2d 16, ¶ 7. "[A] divorce decree is a final, appealable order, regardless of whether it calls for a QDRO that has not yet issued; the QDRO merely implements the divorce decree." Id. at ¶ 15. Consequently, "[a] QDRO is merely an order in aid of execution on the property division *ordered* in the divorce or dissolution decree. So long as the QDRO is consistent with the decree, it does not constitute a modification, which R.C. 3105.171(I) prohibits, and the court does not lack jurisdiction to issue it." (Emphasis sic.) *Bagley v. Bagley,* 181 Ohio App.3d 141, 2009-Ohio-688, 908 N.E.2d 469, ¶ 26. Therefore, when a divorce decree is appealed and there is no stay of the judgment pending appeal, the trial court is not divested of jurisdiction to issue a QDRO consistent with the decree, because the order merely executes orders previously specified in the divorce decree.

{¶ 39} *Bagley,* which the Supreme Court cited with approval in *State ex rel. Sullivan*, was a decision of this court. Relying on our prior decision in *Hale v. Hale*, 2d Dist. Montgomery No. 21402, 2007-Ohio-867, we held in *Bagley* that "when the QDRO is inconsistent with the decree, the court lacks jurisdiction to issue it, and it is void." *Bagley* at ¶ 27. A QDRO is inconsistent with a decree when it modifies a division of retirement benefits ordered in a decree, and a QDRO modifies a decree in that respect when the QDRO varies from, enlarges, or diminishes the division and

disbursement of a retirement benefit the court ordered in the decree. *Wilson* at ¶ 18.

{¶ 40}    The decree divided the parties' interests in Donna's military pension by awarding Daniel "one half the military retirement benefits of the Defendant, Donna Reising, which accrued between the date of the parties' marriage on April 7, 1995 and the de facto termination of the parties' marriage on October 5, 2007, including all proportionate cost of living benefits and survivorship entitlement."

{¶ 41}    The record reflects that Donna was in the military service for ten years, or 120 months, before the parties' married. The term of the marriage which the court determined is 150 months. Of Donna's total military service of 270 months at the time of the divorce, the "coverture" portion of 150 months amounts to fifty-six percent of the total. The decree therefore awarded Daniel a fifty percent interest in the benefits Donna will receive upon her retirement attributable to that fifty-six percent share, plus all cost of living benefits and survivorship entitlement applicable to Daniel's proportionate share.

{¶ 42}    After dividing Donna's benefits in the decree, the court adopted an MQCO providing that the share of Donna's future benefit Daniel is entitled to receive is "the equivalent of this same 150 months of payments, after which all such payments will terminate." The decree made no mention of any such cap on payments. The trial court explained that the cap on payments merely "clarified" the decree by imposing a coverture factor the decree imposed, or should have imposed but didn't. That is contradicted by the record. The share of benefits Daniel was awarded in the decree, fifty percent of fifty-six percent of Donna's benefits that had accrued at the time of the divorce, is a form of

coverture division. Daniel is entitled to receive payments representing his share for as long as Donna receives her benefits. By limiting disbursement of Daniel's benefit to 150 months of payments, the MQCO modifies the decree by diminishing the disbursement of Daniel's right to his share of Donna's benefits Daniel was awarded in the decree. *Wilson,* 116 Ohio St.3d 268, 2007-Ohio-6056, 878 N.E.2d 16.

{¶ 43} The majority agrees with the trial court's description of its cap on payments as a "clarification," for no apparent reason other than that's what the trial court said it is. But, the 150 payment cap isn't a clarification. The 150 cap on payments corresponds to the duration of the parties' marriage during which Donna's benefit accrued. However, the term of the marriage properly determines the extent of the non-participating spouse's proportional share of an accrued benefit, not the number of payments of that share the non-participating spouse is entitled to receive. Because of the 150 month cap on payments of his share Daniel may be paid, Donna will receive the entirety of her monthly retirement benefits after 150 months. That outcome is not only inconsistent with the holding in *Hoyt*; it is also directly contrary to the equal division of marital property that R.C. 3105.171(C)(1) requires the court to order.

{¶ 44} The majority questions whether that outcome will occur, finding the "equivalent of this same 150 months of payments" is ambiguous. If a provision is ambiguous, and a party may be prejudiced by one of the alternative meanings, our duty is to reverse, not simply to hope for the best. Because the MQCO modifies the property division of Donna's retirement benefits ordered in the divorce decree, and absent the agreement of the parties to that modification, the domestic relations court lacked

jurisdiction to order that modification. R.C. 3105.171(I); *Bagley*, 181 Ohio App.3d 141, 2009-Ohio-688, 908 N.E.2d 469 (2d Dist.). The MQCO and the order of November 2, 2009 adopting the MQCO are therefore void.

{¶ 45} The domestic relations court overruled Daniel's motion to vacate the MQCO the court ordered, reasoning that Civ.R. 60(B) offers no basis for that relief. However, Daniel's motion did not invoke Civ.R. 60(B). That rule deals with voidable judgments. QDROs that vary from a property division ordered in a decree are instead void. *Bagley*. Authority to vacate a void judgment is not derived from or controlled by Civ.R. 60(B). *Ervin v. Patrons Mut. Ins. Co.*, 20 Ohio St.3d 8, 484 N.E.2d 695 (1985). That authority is an inherent power possessed by Ohio courts. *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988). Even when Civ.R. 60(B) is invoked, the court may in the exercise of its inherent power to vacate void judgments treat a Civ.R. 60(B) motion to vacate as a common-law motion to vacate a void judgment. *CompuServe, Inc. v. Trionfo*, 91 Ohio App.3d 157, 631 N.E.2d 1120 (10th Dist.1993).

{¶ 46} For the foregoing reasons, I find that the court lacked jurisdiction to adopt the MQCO the court ordered, that the MQCO is therefore void, and that the domestic relations court erred when it overruled Daniel Reising's motion to vacate the void MQCO. I would reverse the order adopting the MQCO and remand the case for issuance of a MQCO that corresponds with the division of Donna Reising's military retirement benefit in the decree of divorce.

. . . . . . . . . .

(Hon. Timothy P. Cannon, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

Patricia N. Campbell, Esq.
Frank M. Payson, Esq.
Hon. Thomas J. Capper