[Cite as *Planey v. Planey*, 2010-Ohio-1295.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

SUZANNA PLANEY,              )
                             )
        PLAINTIFF-APPELLEE,  )
                             )
VS.                          )        CASE NO. 08-MA-203
                             )
JOSEPH PLANEY,               )        OPINION
                             )
        DEFENDANT-APPELLANT. )

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
                              Pleas, Domestic Relations Division of
                              Mahoning County, Ohio,
                              Case No. 1994DR00929

JUDGMENT:                     Affirmed

APPEARANCES:
For Plaintiff-Appellee        Attorney Charles E. Dunlap
                              3855 Starr's Centre Drive, Suite A
                              Canfield, Ohio 44406

For Defendant-Appellant       Joseph Planey, Pro-se
                              880 Squirrel Hill Drive
                              Youngstown, Ohio 44512

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

                              Dated: March 25, 2010

DONOFRIO, J.

{¶1} Defendant-appellant Joseph Planey appeals a decision of the Mahoning County Common Pleas Court, Domestic Relations Division, entering a Qualified Domestic Relations Order (QDRO) stemming from a 1995 divorce decree concerning the distribution of plaintiff-appellee Suzanna Planey's share of the marital home and an IRA.

{¶2} The parties were married in 1968. Suzanna filed for divorce in 1994. When the case was called to trial, Joseph told the court he believed his counsel was ineffective and was going to dismiss him. The court allowed the dismissal but cautioned Joseph that the case was going to proceed to trial that day whether he dismissed his counsel or not. Joseph chose to proceed pro se at trial. During trial, the parties reached an oral separation agreement, the agreement was read into the record, and a final divorce decree was entered on September 1, 1995. (Docket 40.)

{¶3} The parties had various marital assets. The two biggest ones and the subject of this appeal were the marital home and an IRA. The marital home was to remain titled in both parties' names, but effective September 9, 1995, Suzanna was awarded sole and exclusive possession of the home and Joseph was ordered to vacate the home that same day. The property was not to be sold until 1998. Until then, neither party was to further encumber the home, which was still subject to a first mortgage. Suzanna was responsible for the first-mortgage payment, real estate taxes, homeowner's insurance, and all utilities. Suzanna was also responsible for all repair and maintenance costs of $50.00 and under. Costs exceeding $50.00 were to be shared equally between the parties after Suzanna obtained Joseph's consent for the repair or maintenance.

{¶4} In April 1998, the parties were to list the house for sale with a realtor at a mutually agreed upon price. After certain deductions, the net equity of the home was to be divided equally between the parties.

{¶5} Concerning the sale of the marital home, Joseph was given the right to buy out Suzanna's equity in the property at fair market value. If they could not agree on the fair market value, they were to each choose an appraiser who would together

choose a third appraiser to assess the fair market value.

**{¶6}** The IRA was with Fidelity Trust Company and titled in Joseph's name. Pursuant to the divorce decree, each party was to receive one-half of the IRA including interest that accrued from the date of the decree until the sale of the marital home. Until the sale, Joseph was to withdraw $2,100.00 per month from the IRA and give it to Suzanna. At the time of the sale, Suzanna was to receive the difference between $93,500.00 and the sum of the monthly payments received from Joseph plus fifty percent of the accrued interest. The decree stated that each party was to sign a QDRO to effectuate the division of the IRA.

**{¶7}** On December 20, 1995, the trial court modified the divorce decree to provide for $1,700.00 monthly withdrawals from Joseph's IRA to Suzanna, upon a motion filed by Suzanna's attorney. (Docket 44, 48.)

**{¶8}** Joseph appealed the divorce decree arguing that he was forced to go to trial without counsel because the trial court denied his motion for a continuance. On appeal, this court noted that Joseph had only provided select portions of the trial transcript, failing to provide the complete record as required by law. This court noted that Joseph had no constitutional right to counsel in divorce proceedings and found that the trial court had not abused its discretion in denying his motion for a continuance based on the limited record before it. *Planey v. Planey* (Sept. 17, 1997), 7th Dist. No. 95-C.A.-213.

**{¶9}** Thereafter, the parties never prepared or filed the QDRO for the IRA, nor did Joseph make the $1,700.00 monthly withdrawals for Suzanna. Also, apparently sometime in the fall of 2004, the parties reached an agreement whereby Suzanna sold her equity interest in the marital home to Joseph for $95,000. In December 2004, Suzanna quit claimed her interest in the home to Joseph in accordance with that agreement.

**{¶10}** In February 2005, AVCO Financial Services Loan Inc. (n.k.a. CitiFinancial Mortgage) filed a foreclosure action against Joseph on the home. *AVCO Financial Services Loan Inc. v. Planey*, Mahoning County Common Pleas Case No.

2005CV00479. A decree of foreclosure was issued on October 5, 2005, with sale pending.

**{¶11}** In January 2007, Joseph filed claims which were in substance claims of civil conspiracy and intentional infliction of emotional distress against Suzanna, Suzanna's divorce attorney, a collection agent for CitiFinancial, CitiFinancial Mortgage, and CitiFinancial Mortgage's attorney. *Planey v. Planey*, Mahoning County Common Pleas Case No. 2007CV00115.

**{¶12}** Back in the divorce action, Suzanna filed a motion for credit and motion to approve a QDRO on February 16, 2007. (Docket 64.) Suzanna sought approval of a QDRO so she could receive her portion of the IRA as designated by the divorce decree. In addition, she sought an additional $95,000 from the IRA as a credit for her interest in the marital home which she sold to Joseph. A hearing was held before a magistrate on April 10, 2007. Joseph sought to delay the proceedings citing the civil suit he had filed in the general division and the need to hire an attorney. Suzanna's counsel indicated that an additional ten days would be needed in order to obtain the required information from Fidelity concerning the IRA by way of a subpoena. The magistrate continued the matter to May 24, 2007, and stated that the matter would not be stayed or delayed due to the other litigation absent a court order to do so. (Docket 70.) Joseph filed a "response" to the magistrate's order contending that he was seeking a stay of the proceedings based only on the other litigation and not his desire to seek counsel. (Docket 71.) He also took issue with the magistrate's impartiality, claiming that the magistrate was "rather aggressive" and in "opposition" to him.

**{¶13}** On April 19, 2007, Joseph filed a motion to quash the subpoena issued by Suzanna's attorney to Fidelity Investments. (Docket 72.) In response, Fidelity declined to forward the information regarding Joseph's IRA. As the May 24, 2007 hearing date neared, Joseph was diagnosed with gout and sought a further continuation of the proceedings. The magistrate reset the hearing for June 7, 2007. (Docket 75.)

**{¶14}** The hearing went forward on June 7, 2007, and the magistrate filed a decision on July 6, 2007. (Docket 76.) The magistrate again denied Joseph's motion to stay. As for the marital home, the magistrate found based on the equitable doctrine of partial performance that the parties reached an agreement evidenced by Suzanna's testimony and a writing between the parties that Joseph would pay Suzanna $95,000 as payment for her share of the home. The magistrate denied Joseph's motion to quash the Fidelity subpoena. Fidelity was ordered to provide the court with the information about the IRA to the court under seal so that only that information that was necessary to issue the QDRO would be disclosed and all other information about the IRA would remain confidential. Joseph filed objections to the magistrate's decision without filing a transcript of the proceedings in support. (Docket 77.) Later, Joseph filed another motion to quash the subpoena issued by Suzanna's attorney to Fidelity Investments. (Docket 78.) Also, he filed a renewed motion to stay based on his filing for a writ of prohibition in this court in *Planey v. Mahoning Cty. Common Pleas Ct.*, 7th Dist. 07 MA 141. (Docket 79.)

**{¶15}** In the prohibition case before this court, Joseph sought to prohibit the domestic relations division from proceeding any further on Suzanna's motion to approve a QDRO. Joseph again cited the civil action for damages he filed against Suzanna and others in *Planey v. Planey*, Mahoning County Common Pleas Case No. 2007CV00115. This court later dismissed Joseph's motion for a writ of prohibition reasoning that the domestic relations court had jurisdiction to rule on Suzanna's motion and that no other court was about to entertain that motion. *Planey v. Court of Common Pleas of Mahoning Cty.*, 7th Dist. No. 07 MA 141, 2007-Ohio-7273.

**{¶16}** On August 20, 2007, a visiting judge for the domestic relations court conducted a hearing on Joseph's objections. Joseph again argued that the proceedings should be stayed because of the other civil action and his filing for a writ of prohibition in this court. The court denied the stay and proceeded to hear arguments on Joseph's objections to the magistrate's decision. When it became apparent that Joseph had failed to provide a transcript of the proceedings before the

magistrate, the court overruled the objections and adopted the magistrate's decision in full. (Docket 82.) Joseph never appealed that decision.

**{¶17}** Joseph then filed an "urgent" motion to stay again based on his filing for a writ of prohibition in this court and a motion for restraining order to prevent Fidelity from releasing information about the IRA to Suzanna's attorney. (Docket 83, 85.)

**{¶18}** On August 28, 2007, in response to the domestic relations court's order to comply with the subpoena, Fidelity sent the requested records to the court in an encrypted CD-ROM. Due to the prohibition action Joseph filed in this court in *Planey v. Court of Common Pleas of Mahoning Cty.*, 7th Dist. No. 07 MA 141, Fidelity withheld the password to decrypt the CD-ROM until a ruling from the court.

**{¶19}** On September 19, 2007, the domestic relations court's magistrate held a hearing to review the information provided by Fidelity concerning Joseph's IRA in order to issue the previously granted QDRO. Implicitly referencing the June 7, 2007 hearing before this same magistrate, Joseph complained that he was not made aware by the court that the proceedings were recorded. The magistrate explained to Joseph that all the hearings were recorded. He also reminded Joseph of the court's duty to remain fair and impartial, and because of that duty it was not permitted to give him legal advice. The magistrate also explained that the rules of procedure applied equally to those parties appearing with counsel and those proceeding pro se. The court went on to advise Joseph that the writ action in this court had been dismissed and denied his renewed motion to stay the proceedings. Joseph continued to lodge numerous objections to the proceedings, take issue with protocol, and complain that his rights and justice were not being well served by the magistrate. The magistrate unsuccessfully attempted to contact Fidelity's representative for the password to decrypt the information on the CD-ROM. The magistrate concluded the proceedings and reset the hearing to October 2, 2007, to provide time to coordinate with Fidelity's representative. (Docket 87.)

**{¶20}** On September 28, 2007, Joseph filed a complaint in this court seeking a writ of mandamus against the domestic relations court's magistrate, Suzanna and

her attorney, and Fidelity. Joseph again sought to delay the QDRO proceedings until his civil case (*Planey v. Planey*, Mahoning County Common Pleas Case No. 2007CV00115) was resolved. In response, the magistrate continued the QDRO proceedings until this court resolved the mandamus action. (Docket 88.)

**{¶21}** On February 13, 2008, this court dismissed Joseph's mandamus action. This court reasoned that the domestic relations court was fully within its jurisdiction to proceed on the QDRO and that Joseph had an adequate remedy at law via filing a motion to set aside the domestic relations court magistrate's order. *Planey v. Hepfner*, 7th Dist. No. 07 MA 172, 2008-Ohio-711. Joseph appealed that decision to the Ohio Supreme Court and requested a stay.

**{¶22}** In an entry filed February 26, 2008, and following dismissal of the mandamus action, the visiting judge for the domestic relations court reset the QDRO proceedings for May 27, 2008. (Docket 90.) On May 27th, Joseph filed a motion in the domestic relations court to stay the proceedings based on his appeal of this court's decision in the mandamus action to the Ohio Supreme Court and the attendant motion there to stay that decision. (Docket 91.) Joseph also filed a civil suit in Mahoning County Common Pleas Court against the common pleas court itself, the visiting judge, the domestic relations court judge, the magistrate, the chief magistrate, this court, and Suzanna and her attorney. Joseph accused the court, including this one, of prejudice against him and failing to protect his constitutional rights resulting in the invasion of the "sanctity" of "his" IRA. He claimed that he had suffered irreparable harm to his health and "mental status" which prevented him from working in gainful employment to earn an income. Joseph sought five million dollars ($5,000,000) in damages. *Planey v. Mahoning Cty. Ct. of Common Pleas*, Mahoning County Common Pleas Case No. 2008CV2166.

**{¶23}** The QDRO proceedings commenced on May 27, 2008, before the visiting judge. Suzanna's counsel presented the court with a fax copy of an order from the Ohio Supreme Court denying the stay request and dismissing his appeal. *Planey v. Hepfner*, 118 Ohio St.3d 1414, 2008-Ohio-2488, 887 N.E.2d 352,

reconsideration denied by 119 Ohio St.3d 1417, 2008-Ohio-3880, 891 N.E.2d 774. The court accepted the copy (and later verified it with the Ohio Supreme Court by phone) and denied Joseph's motion to stay the QDRO proceedings. Joseph complained that he had not received a copy of the Ohio Supreme Court's order. Throughout the proceedings he continually objected and complained about his constitutional rights being invaded and not protected by the court. The court was able to contact Fidelity's representative and obtain the password to decrypt the CD-ROM. Copies of the IRA documents were provided to both parties and the court allowed each fourteen days to file a proposed QDRO. An entry memorializing the visiting judge's decision concerning the May 27th hearing was filed June 2, 2008. (Docket 92.)

{¶24} In yet another attempt to delay the issuance of the QDRO, Joseph filed several motions, including a motion for injunction, response and motion to dismiss the visiting judge's June 3, 2008 decision, motion for a restraining order, and motion to recuse. (Docket 93, 94, 95, 96.) Joseph also filed a motion with the Ohio Supreme Court to disqualify the visiting judge that presided over the QDRO proceedings. (Docket 97.) The Court later denied the motion and subsequent reconsideration thereof, finding no basis for which to disqualify the visiting judge and that Joseph had failed to provide any evidence that the visiting judge had violated his constitutional civil rights. (Docket 98, 101.)

{¶25} On June 26, 2008, the visiting judge filed the QDRO ordering Fidelity to transfer $188,500 plus fifty percent of the accumulated interest from July 10, 1995, from Joseph's IRA to Suzanna's IRA. (Docket 100.) Joseph never appealed the QDRO. On September 10, 2008, the visiting judge issued a supplemental entry directing Fidelity to transfer a fixed amount of $229,500 from Joseph's IRA to Suzanna's IRA. (Docket 105.) The entry also added language indicating that the transfer would be a nontaxable event. Joseph timely appealed the supplemental judgment entry to this court which is the subject of the present appeal.

{¶26} Joseph, still proceeding pro se, raises eleven assignments of error.

They state respectively:

{¶27} "The Trial Court erred to the prejudice of Appellant by having ex parte communication with Appellee without the permission of Appellant[.]"

{¶28} "The Trial Court erred to the prejudice of Appellant by making a ruling that had not been served upon Appellant[.]"

{¶29} "The Trial Court erred to the prejudice of Appellant by allowing Appellee to withhold the calculations for the IRA distribution[.]"

{¶30} "The Trial Court committed reversible error by allowing Appellee to make false and misleading statements when the Trial Court had personal knowledge that statements were false[.]"

{¶31} "The Judge of the Trial Court committed reversible error by not recusing himself after being named a Co-Defendant in a related case[.]"

{¶32} "The Trial Court erred by having ex-parte communication with Appellee Fidelity Investments and Risk Management without the permission of Appellant[.]

{¶33} "The Trial Court erred by their failure to issue requested timely findings of fact with separate conclusions of law in support of its judgment[.]"

{¶34} "The Trial Court erred to the prejudice of Appellant by the miscalculation of the amount of money that was available to Appellant[.]"

{¶35} "The Trial Court erred to the prejudice of Appellant by allowing Appellee to invade Appellant's IRA[.]"

{¶36} "The Trial Court failed to allow Appellant the credit in the amount of $235,869.69 that was expended during the time Appellee chose to remain in the family dwelling[.]

{¶37} "[T]he trial court failed to protect Appellant['s] * * * civil and constitutional rights[.]"

{¶38} A divorce decree is final and appealable even though the QDRO implementing the judgment has not been entered yet. *Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056, 878 N.E.2d 16. Here, the court orders concerning the division and distribution of the parties' marital assets were entered on September 1,

1995, and August 20, 2007 (Docket 40, 82). Joseph appealed the September 1, 1995 order and to the extent that his assignments of error are directed to that decision, they are barred by the doctrine of res judicata.[1]

**{¶39}** Joseph never appealed the August 20, 2007 decision concerning Suzanna's credit for her share of the marital home and to the extent that his assignments of error are directed to that decision, they are untimely.

**{¶40}** Accordingly, each of Joseph's assignments of error is without merit.

**{¶41}** The judgment of the trial court is affirmed.

Vukovich, P. J., concurs.

DeGenaro, J., concurs.

---

1 When the trial court attempted to explain to Joseph the narrowness of the QDRO proceedings and that the appeal from the divorce decree had been exhausted, Joseph acknowledged that he should have pursued those issues then but did not because the parties were attempting to reconcile. (05/27/2008 Hearing, Tr. 52.)